## MOSS *v.* SHREVE.

1. BROKERS—MARGIN ACCOUNTS—DIRECTION TO SELL—QUESTION FOR JURY—CREDIBILITY OF WITNESSES.

In action by stock broker to recover accrued balance from marginal purchases and sales of stocks on defendant's account, whether plaintiff was entitled to recover for losses sustained or liable to defendant for failure to sell out latter's holdings pursuant to his direction *held*, question properly left for consideration of jury under conflicting testimony of defendant and two employees of plaintiff, the credibility of the witnesses being involved.

2. TRIAL—REQUESTS TO CHARGE—BURDEN OF PROOF.

In stock broker's action against principal for accrued balance on marginal account where burden of proof as to two of the three special questions submitted to jury was upon defendant claiming recoupment, failure to instruct as to such burden of proof *held*, not reversible error in absence of request for a charge (Court Rule No. 37, § 9 [1933]).

3. BROKERS—REPUDIATION OF FAILURE TO SELL OUT—EVIDENCE—REQUESTS TO CHARGE.

In stock broker's action of assumpsit against principal for accrued balance on marginal account, request to charge that after defendant's direction to sell out all of his holdings and his subsequent repudiation of plaintiff's failure to sell, evidence that defendant ratified such failure to sell by thereafter accepting, without protest, notices of sale and monthly accounts *held*, properly refused.

4. TRIAL—REQUESTS TO CHARGE—INACCURATE STATEMENT OF LAW.

It is not error for a trial court to refuse to give a request to charge which does not accurately state the law applicable to the case.

5. APPEAL AND ERROR—BROKERS—SPECIAL QUESTIONS—EVIDENCE.

In stock broker's action of assumpsit against principal for accrued balance on marginal account in which action defendant sought recoupment because of plaintiff's failure to sell out defendant's holdings as ordered, Supreme Court is bound by jury's answers, based on conflicting testimony, to special questions as to whether defendant did order all his stocks sold, whether upon learning of plaintiff's failure to sell within a few days he definitely repudiated such failure and whether there was a subsequent waiver of such repudiation.

Appeal from Wayne; Webster (Arthur), J. Submitted October 14, 1936. (Docket No. 91, Calendar No. 38,757.) Decided January 4, 1937. Rehearing denied March 2, 1937.

Assumpsit by William E. Moss, doing business as W. E. Moss & Company, against C. Upton Shreve to

recover sums due on account. Recoupment by defendant against plaintiff for damages due to failure of plaintiff to sell stock as ordered by defendant. Special verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Thomas B. Moore* and *William C. Frue,* for plaintiff.

*C. Upton Shreve* and *John G. Libbers,* for defendant.

NORTH, J. Plaintiff, a stock broker, brought suit to recover from defendant approximately $2,500 claimed upon a stated account as an accrued balance from marginal purchases and sales of stocks. Defendant, by recoupment, sought to recover from plaintiff damages alleged to have resulted from plaintiff's failure to sell all of defendant's stock on or about September 15, 1932, as ordered by defendant. At the close of the proofs three special questions were submitted to, and answered by, the jury. Thereafter the circuit judge, acting in accord with the jury's determinations and on defendant's motion, entered judgment against plaintiff and in favor of defendant for $4,674.23. Plaintiff has appealed.

In June, 1932, defendant opened a marginal account with plaintiff. Defendant was to maintain a 30 per cent. margin. For this purpose he paid plaintiff from time to time to protect margins. The total amount prior to September, 1932, was approximately $2,000. Defendant's investments were in the stock of two bank holding companies, the Guardian Detroit Union Group, Inc., and the Detroit Bankers Company. On or about September 13th the market

price of these two stocks receded. Plaintiff asked defendant for additional margin and was given direction to sell 180 shares of Guardian stock at the best obtainable price, and 120 shares of Detroit Bankers at $22 per share. One hundred and sixty shares of Guardian stock were sold but the Detroit Bankers' stock could not be sold at the prices named by defendant. Plaintiff continued to press defendant for additional margins. On September 15th defendant went to plaintiff's office. What occurred there on that occasion is in dispute and has resulted in this lawsuit. Defendant claims that on September 15th he directed plaintiff to sell out his entire holdings. This is denied by plaintiff and instead plaintiff asserts that defendant continued to carry on his brokerage account through plaintiff for weeks following September 15th and that the ultimate result was the loss for which plaintiff has brought this suit. On the other hand defendant bases his right of recovery against plaintiff upon the claim that plaintiff disregarded the direction of defendant given on September 15th to sell out all of his holdings. As the market stood on that date and for some four or five days thereafter, such a sale would have netted defendant a sum sufficient to justify recovery by him in the amount of the judgment entered in the circuit court. The record presents a square conflict of testimony as to the claims of the respective parties. For the most part plaintiff relies upon the testimony of one of its employees, Mr. Burr. His testimony in some particulars is corroborated by that of another employee. Also plaintiff claims that the record of transactions tends to sustain its contention. On the other hand defendant is compelled to rely largely, if not wholly, upon his own testimony. It is for this

reason that plaintiff and appellant urges that the judgment entered was against the great weight of the testimony. The trial judge in passing upon plaintiff's motion for a new trial held against plaintiff's contention. The following is from his opinion:

"The issue of fact presented to the jury involved a sharp dispute between the defendant on the one side and two employees of the plaintiff on the other side. They disagreed hopelessly regarding certain features of the controversy. * * * This presented an issue of fact, in my opinion, which the jury were called upon to determine, and in determining it they might believe the defendant alone or believe the two witnesses who were employees of the plaintiff. This involved the question of credibility of the evidence, which was peculiarly the province of the jury."

The holding of the circuit judge was correct.

In support of its motion for a directed verdict at the close of the proofs, plaintiff assigned the following reason:

"That a verdict also be directed in his favor * * * for the further reason that if it has here been shown that the defendant, on or about September 15, 1932, gave plaintiff's agent or agents an order to sell all of the defendant's stock holdings, that thereafter defendant failed to repudiate within a reasonable time plaintiff's failure to sell; that following notice that all sales had not been made, he ratified, approved and affirmed his account with plaintiff."

At the conclusion of the proofs counsel agreed that in lieu of taking a general verdict the following special questions should be submitted to the jury. Following the respective questions we quote the jury's answer:

1. "Did the defendant Mr. Shreve on or about September 15, 1932, order all the stocks in his account with Moss & Company sold?"

Answer: "Yes."

2. "If the answer to question number one is yes, then answer the following question: Did the defendant Mr. Shreve on or about September 20, 1932, upon learning his stock had not been sold, definitely repudiate the plaintiff's failure to sell the entire stock held in his account?"

Answer: "Yes."

3. "If the answer to question number two is yes, then answer the following question: Did the defendant Shreve during November and December, 1932, give the plaintiff selling orders on stock which had not been previously sold?"

Answer: "No."

Except as they are hereinafter discussed, we are of the opinion that the jury's answers to the special questions are controlling as to plaintiff's assignments of error. This obviates the necessity of detailed discussion of such assignments in this opinion.

In submitting the special questions the court charged the jury, in part, as follows:

"Now, in determining these special questions you take them as you do in all cases, on an analysis of the testimony which you had here in open court, you take that testimony, analyze it, if there is a dispute between the witnesses you find out where the truth lies, and when you have found out where the truth lies, then you answer the question in accordance with your finding. * * *

"In determining the answers to these questions, you have to pass upon the weight and credibility of the evidence. * * *

"Now, take these questions under the instructions I have given you, find out what the truth is, answer them according to your findings, and return them signed to the court."

Appellant assigns as error that notwithstanding the burden of proof as to special questions numbers 1 and 2 rested upon defendant, the trial court gave no instruction (except as possibly may be implied from the above quoted portion of the charge) as to the burden of proof. Since appellant made no request for a charge as to the burden of proof, it cannot successfully urge error on that ground.

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested." Court Rule No. 37, § 9 (1933).

Appellant also sets up as a ground of error that the court did not charge the jury in effect that although defendant did repudiate plaintiff's failure to sell all of defendant's stock, still such repudiation might be waived or defendant estopped from asserting the same by subsequently approving sales of his stock made by plaintiff, or by accepting without protest notices of such sales. The only request preferred by plaintiff on this phase of the case reads:

"I further charge you, as a matter of law, that even if you believe from all of the evidence that defendant did on or about the 20th of September, 1932, or a few days thereafter repudiate plaintiff's failure to sell all of defendant's shares of stock, there was nothing to prevent him from thereafter accepting the account and ratifying and approving his agent's failure to sell. This ratification, I charge you, may be shown by defendant, in October and November, 1932, giving orders for the sale of the stock *and ac-*

*cepting without protest or a communication of any kind the notices of sale and monthly accounts and other writings sent to him by plaintiff."*

The italicized portion of the request, as applied to the issues submitted in this case, is not a correct statement of the law. The jury, by its answer to question number 2, found that defendant on or about September 20, 1932, definitely repudiated plaintiff's failure to sell the entire stock held in his account. Such a repudiation would not be waived, nor could defendant be estopped from asserting the same, merely by reason of plaintiff's having sent defendant notices of unauthorized transactions to which notices defendant made no reply. It is not error for a trial court to refuse to give a request to charge which does not accurately state the law applicable to the case.

As bearing upon defendant's repudiation being definite and final and as justifying such a finding by the jury, we quote in part from his testimony:

"So Mr. Burr came over to my office . * * * and I said, 'Why didn't you sell these stocks? You knew that I could not put up any more money.' * * * I also said to him that he had, by not selling the stocks, got me in a serious jam, and that I was holding him and his company responsible for not selling those stocks on that day, and that I would not have anything more to do with the account, and that I insisted the stocks should have been sold and that I was entitled to the money that would have come by having sold them at the prices that were prevailing on the day when I asked them to sell them. * * * He called me up on the phone (later) and told me that he was sorry about this happening, and said he thought he was going to try to get me out of this jam. I said, 'As far as I am concerned I am abso-

lutely through with the account. I told you to sell them, and I am not going to have anything more to do with it,' and that is the time I told him that I was going to hold him responsible for it, the same as I told him when he was in the office.''

Testimony given in behalf of plaintiff conflicted with that above quoted; but both as to there having been a definite and final repudiation, and as to there having been a subsequent waiver of such repudiation, issues of fact were presented upon which the findings by the jury are final. On this record we are bound by the jury's answers to the special questions.

Other claimed prejudicial errors are embodied in the questions propounded by appellant and discussed in its brief somewhat at length. Each of such alleged errors has been considered. In this, as in most vigorously contested trials, some irregularities are manifest. But we find no error which would justify reversal or which merits further discussion.

Judgment entered in the circuit court is affirmed. Costs to appellee.

Fead, C. J., and Wiest, Butzel, Bushnell and Sharpe, JJ., concurred. Toy, J., took no part in this decision. Potter, J., did not sit.