[Civil No. 4014.   Filed January 3, 1939.]

[85 Pac. (2d) 992.]

JAMES G. HAMMELS and NELLIE M. HAM-
MELS, His Wife, VINTON HAMMELS, HELEN
H. BENNETT, and JOSEPHINE E. KNIGHT
and J. J. KNIGHT, Her Husband, Doing Busi-
ness as a Joint Enterprise Under the Firm Name
and Style of "HAMMELS' TRACT," Appel-
lants, v. CHARLES E. BRITTEN, Appellee.

Messrs. Struckmeyer & Flynn, for Appellants.

Mr. George M. Sterling and Mr. Harold J. Janson, for Appellee.

LOCKWOOD, J.—Charles E. Britten, hereinafter called plaintiff, brought suit against James G. Hammels and Nellie M. Hammels, his wife, Vinton Hammels, Helen H. Bennett and William Bennett, her husband, and Josephine E. Knight and J. J. Knight, her husband, doing business as a joint enterprise under the firm name and style of "Hammels Tract," to recover damages for injuries which he claims resulted from an accident arising out of and in the due course of his labor, services and employment for the above-named parties, and due to a condition or conditions of the employment. He alleged that his employers as aforesaid had failed to comply with the provisions of section 1422, Revised Code 1928, in that they had not provided for compensation for their employees in the manner directed by such section, and that he, therefore, elected to sue for damages pursuant to section 1433, Revised Code 1928.

The case was dismissed as to William Bennett, it appearing that he was in no way the employer of plain-

tiff, and the matter was tried before a jury as to the other defendants, which jury returned a verdict against all of such defendants in the sum of two thousand dollars, and the matter is before us on appeal.

In the very recent case of *Robles* v. *Preciado,* 52 Ariz. 113, 79 Pac. (2d) 504, we have had under discussion the nature of an action such as this, and have held that it is essentially one for negligence, and governed by the usual rules of law which apply to such actions, except in so far as the statute has specifically modified it.

There are four assignments of error which raise two questions for our consideration. The first is that the undisputed evidence shows that the only employer of plaintiff at the time of his accident was J. J. Knight, and that judgment should, therefore, have been rendered in favor of all of the defendants except the Knights. This requires our consideration of the evidence. Taken in the strongest manner in behalf of plaintiff, it may be stated as follows:

James G. Hammels and Nellie M. Hammels, were, respectively, the father and mother of Vinton Hammels, Helen H. Bennett and Josephine E. Knight. These parties were jointly interested in three subdivisions of real estate which, although having separate legal identities, were commonly referred to as the "Hammels Tract." Different portions of these subdivisions had been sold to a number of parties, among whom was plaintiff, the sale to many of them being upon time payments. During the depression, which has so long existed in Arizona, a number of these parties were unable to meet the payments on the purchased premises as the same became due, and the owners of the Hammels tract, not wishing to cancel the contracts of purchase, arranged a method whereby payment could be made by the purchasers, in part at least, in labor.

The way in which this plan worked was as follows: J. J. Knight, the husband of Josephine E. Knight, acted as manager of the tract. In addition thereto, he, as well as the other defendants, had outside individual properties and interests, owned and operated separately and in no way as a joint enterprise. Whenever it became necessary to have any work done, either upon the joint enterprise—the Hammels tract—or for any of the individual enterprises of any of the defendants, Knight would notify the parties who had purchased lots in the Hammels tract and were delinquent in their payments, that he had work for them, and they would come to him and perform labor wherever he told them to, either upon the tract or on the property of the individual defendants. Payment for the labor was made by a credit upon the delinquent installments due on the purchase price of the Hammels tract lot, whether the work had been performed on such tract or for any of the individual defendants, but when an accounting was held between the owners of the tract, if any of the work had been done for one of them individually, that fact was taken into consideration in determining the amount which was to be drawn by each from the profits and proceeds of the common enterprise, and deducted accordingly. Plaintiff did not know of the method in which the accounts and labor were handled as aforesaid, but believed that he was working for the joint enterprise because of the fact that he knew his wages were credited on what he owed the enterprise, and Knight, who directed him where to work, was its manager. On the day that the accident which is the subject of this action occurred, plaintiff was notified that there was work available, and he, together with a number of others, reported to Knight. They were told to go to a certain tract of land some distance from the Hammels tract and load

an automobile trailer with broom corn, and then take the corn to the dairy ranch of Knight, and unload it. This dairy ranch was the separate property and enterprise of the Knights, and the other defendants had no interest whatever therein, nor in the work which was to be done, the fodder being hauled as food for the cattle belonging to the dairy. While the fodder was being hauled, the driver of the car hauling the trailer, an employee of Knight named Latta, turned a corner so sharply and swiftly that plaintiff, who was riding on the trailer, slipped therefrom and fell, injuring his hand in such a manner that he suffered a permanent partial disability.

It is not disputed on this appeal that plaintiff suffered injuries for which he was entitled to recover under the provisions of section 1433, *supra,* nor is it contended that the amount of two thousand dollars awarded him by the jury was excessive. It is, however, urged most strenuously that on the aforesaid state of facts his remedy was against the Knights, his real employers, and that he had no cause of action against the other defendants.

There can be no doubt from these facts that plaintiff's real employer was Knight. He was doing work for Knight individually, for which the latter ultimately paid, although the payment was originally made by a credit on his contract with the owners of the Hammels tract. The situation may be illustrated as follows: A owes B, a grocer, a sum of money for goods purchased; C says to A, ''If you will do some work for me, I will arrange to have B give you credit on your indebtedness for the value of the work which you have done, but will not pay you in cash.'' Under such circumstances A performs the work for and is the employee of C, and not of B. It also appears, however, that plaintiff when he went to work did not know of

the arrangements between the defendants above set forth, nor for whom he was working, but did know that his wages were to be credited upon his debt to the joint enterprise. Does this situation give to plaintiff a right to bring an action against the owners of the latter, rather than against his actual employer, Knight?

██ If this were an action upon a contract, it might well be urged by plaintiff that since Knight was the agent for the joint enterprise, and since plaintiff had contracted with Knight, believing he was acting for defendants, the latter in an action to recover on contract would be estopped from denying their liability on the contract. But this action is not in contract but in tort, and rests upon the law of tort as applied to a tort committed by the employee of an ostensible agent who, as a matter of fact, is not acting in the scope of his agency. The American Law Institute in the Restatement Law of Agency, chapter 7, section 265, sets forth the general rule as follows:

*"General Rule.* Except where there has been reliance by a third person upon the appearance of agency, one who has manifested that another is his servant or other agent does not thereby become liable for the other's tortious conduct, although it is apparently authorized or is within the apparent scope of employment."

"Comment: a. Persons are liable in tort only if their activities or things in their possession, or their servants or agents have caused harm to others. The fact that a person manifests to a third person that another is his agent or servant does not of itself cause harm. It is only where there has been some reliance by a third person upon the appearance of a principal and agent or a master and servant relationship that such appearance can be the basis of liability, *and then only if a subsequent harm is in some manner induced by the reliance.* Except in such cases, therefore, a person is not liable for the trespass, negligence, defa-

mation, or other tort of an apparent servant or agent.
. . . " (Italics ours.)

█ In the present case, even assuming that plaintiff believed Knight to be the agent of the joint enterprise and relied upon such belief in accepting employment, there is nothing to show that such reliance in any manner contributed to, or caused, the accident which plaintiff suffered. That was the result of the negligence of another party, Latta, who was working for Knight, and who testified at the trial that he knew this fact. We think the trial court erred in not granting the motion for a directed verdict in favor of all of the defendants except J. J. Knight and Josephine E. Knight.

█ The next question is whether the court erred in its instructions to the jury in regard to the measure of damages. This covers two points, the first that the jury was not informed as to the proper measure and elements of damages, and second, that the court refused to give a certain requested instruction to the jury. The court gave the following general instruction in regard to the measure of damages:

"The Court instructs the jury that if you find for the plaintiff, it becomes your duty to assess his damages at such sum as the evidence relating thereto shows him to be entitled to, not to exceed the sum asked in the complaint. The elements of damage you are entitled to take into consideration consist of all the effects of the injury complained of, if any, as shown by the evidence relating thereto, and in this connection, gentlemen, I instruct you, you are not privileged to go beyond the testimony which has been introduced here on this witness stand to determine the amount of damages."

This instruction, of course, was correct so far as it went, but it is very general in its nature and does not specify in detail the elements of damages, as

shown by the evidence, which the jury might consider. It is urged that under our decision in *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124, the failure to charge more in detail was reversible error. Since the decision in that case, we have adopted certain uniform rules for the superior courts, among which is subdivision 4 of rule 5, which reads as follows:

"Instructions desired by any party shall be presented to the court before the latter has commenced to instruct the jury, with a notation under each instruction of any authorities relied upon to sustain it. The parties shall be deemed to have waived the necessity of any instructions except those requested as above."

The following instruction was requested by defendants orally before the argument began and it was refused by the court:

"I wish the record to show if the Court does give an instruction on the measure of damages, we request the court to instruct the jury that they may not take into consideration any monetary loss to date since the same is not shown by the evidence, and that there is no evidence that the injuries are permanent, or that he sustained damages by reason of the injury."

After the court concluded the giving of instructions on its own motion, it asked counsel whether there were any requested instructions, and counsel for defendants again referred to the instruction above quoted as being asked, to which the court replied; "We will let the record show that you again renew that, and that it is not given by the court." We think under the rule this was a waiver of any error for a failure to give more complete instructions on the measure and elements of damages other than that specifically requested.

We consider next whether the failure to give the instruction asked by defendants was error. The

evidence of plaintiff's medical witness showed that at the time of the trial, something like two years after the accident, the injured wrist showed an impairment for heavy work of approximately fifty per cent. It also appears that the plaintiff's regular occupation was some form of heavy manual labor. We think that the condition described by the medical witness as existing over two years after the accident might reasonably have been found by the jury to be permanent, and it would have been error to instruct there was no evidence to support such a finding.

When an instruction is requested which is good in part, and bad in part, it is not error for the trial court to refuse to give it, nor is it the duty of the court to separate the correct statement of law contained in the instruction from that which is incorrect. *Moreno v. Russell,* 47 Ariz. 38, 53 Pac. (2d) 411; *Mutual Ben. Health & Accident Assn.* v. *Neale,* 43 Ariz. 532, 33 Pac. (2d) 604; *MacDonald* v. *Calkins,* 31 Ariz. 161, 251 Pac. 458.

The judgment of the trial court is affirmed as to defendants J. J. Knight and Josephine E. Knight, and reversed as to the other defendants, James G. Hammels, Nellie M. Hammels, Vinton Hammels, and Helen H. Bennett, and remanded with instructions to the trial court to enter judgment in favor of the last-named defendants.

ROSS, C. J., and McALISTER, J., concur.