469 P.2d 855

**STATE of Arizona, ex rel., Justin HERMAN, Director, Arizona Highway Department, Appellant,**

v.

**Pete MESTAS, a single man, Appellee.**

**No. 1 CA–CIV 940.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 25, 1970.

Rehearing Denied June 22, 1970.
Review Denied Sept. 15, 1970.

Gary K. Nelson, Atty. Gen., Phoenix, by James R. Redpath, Asst. Atty. Gen., for appellant.

Standage, Allen & Phelps, by Gove L. Allen, Mesa, for appellee.

JACOBSON, Acting Presiding Judge.

This appeal requires us to determine whether or not the language contained in a right-of-way contract is a bar to a subsequent action by the landowner in inverse eminent domain.

Plaintiff-appellee, Pete Mestas, brought an action in inverse eminent domain against the defendant-appellant, State of Arizona ex rel., Justin Herman, Director, Arizona Highway Department, seeking damages for an alleged change of grade and resulting impairment of access to plaintiff's business property located on U.S. Highway 66 in Seligman, Arizona. The matter was tried to a jury which returned a verdict in plaintiff's favor for the sum of $11,000.00. Judgment was entered for plaintiff and against defendant for this amount, together with interest at 6 per cent per annum from April 4, 1966, until paid, and costs in the sum of $141.70.

The following recitation of facts follow our oft-stated rule that the evidence will be viewed in a light most favorable to supporting the jury's verdict.

In late 1962 or early 1963, plaintiff acquired the ownership of a corner lot in Seligman, Arizona, fronting on U.S. Highway 66, at that time a two-lane highway.

In August or September, 1963, plaintiff was approached by George Lauman, a representative of the Arizona Highway Department concerning the acquisition by defendant of twenty feet of plaintiff's property in order to widen U.S. 66 to a four-lane highway. The plaintiff's property at this time was unimproved, and he was offered the sum of $715 based upon the taking by defendant of 2,000 square feet of his property valued at the rate of 35¾ cents per foot, the same amount being offered to plaintiff's neighbors. Plaintiff at this time informed Lauman of his proposed plan of building a service station on this corner lot and declined the offer. Plaintiff's lot is located on the north side of U.S. 66 and the natural terrain in this area slopes from the north or rear of plaintiff's lot to the south where plaintiff's lot fronts on U.S. 66. Subsequent meetings took place between plaintiff and Lauman during which time plaintiff made inquiries concerning any grade changes which would result to U.S. 66 by reason of the proposed construction. Both plaintiff and Lauman testified that plaintiff was shown construction plans of the project. It is apparent, at least as between the plaintiff and representatives of the defendant to whom plaintiff talked, that these plans did not show the elevation of the gutter of the new U.S. 66 in relation to the property line of plaintiff after the twenty foot taking by defendant. Plaintiff testified that Lauman advised him the new widened highway would be six inches higher at his new property line than the existing highway. Lauman on the other hand testified that he informed plaintiff the new center of the new highway would be six inches lower than the existing highway. Since the new highway would be "crowned", the gutter line of plaintiff's property would be considerably lower than six inches. During the subsequent discussions with Lauman, the new proposed right-of-way line as it affected plaintiff's property was established and plaintiff was told to place his gasoline pumps at least twelve feet back from this new line.

In September, 1963, plaintiff commenced construction of his new service station in compliance with defendant's instructions concerning setback. In order to level his lot, and as he testified to compensate for the added height of the new highway, he placed between eight and ten inches of fill dirt on the front of his property. The construction was completed in December, 1963, and open for business on January 2, 1964. The completed station, insofar as pertinent here, consisted of a cement block service station with four gas pumps in front sitting on a cement slab, approximately four inches thick.

The evidence revealed that sometime between November and December of 1963, defendant caused a survey to be conducted to establish the grade of the new highway gutter at the point it touched plaintiff's property. A grade "peg", a 4″ by 4″ block, was placed at this level on the property, which at the time of placement was approximately eight to ten inches below the natural level of the terrain. A member of the survey crew who placed this peg testified he called the peg to plaintiff's attention and advised him that this would be the new grade. Plaintiff denies he ever saw or was informed of this grade. Cross-examination of this witness developed uncertainty as to whether this grade stake should be the top of the proposed curb or bottom of the proposed gutter, a difference of approximately seven inches. It also appears that this grade peg was placed after plaintiff had poured the cement slabs for his gas pumps.

Subsequent to the building of the service station, numerous attempts were made by defendant to acquire the twenty foot right-of-way expansion for the original figure of $715.00. These contacts, after the plaintiff was advised that condemnation would have to be resorted to, culminated in the plaintiff executing a right-of-way contract on June 16, 1964 and receiving the sum of $715. Prior to execution of this contract and after construction of the service station, Lauman testified he told the plaintiff that in his opinion the proposed construction would leave him with "good" access. He further testified that the appraisal upon which he based his offer to plaintiff did not include any damages for impairment of access. George Christenson, an engineer of the Arizona Highway Department in charge of field construction for this project, testified that he did not realize plaintiff would have any access problems until construction started.

The right-of-way contract signed by plaintiff contained the following clauses:

"In said instrument the consideration expressed, constitutes the full compensation due the grantor therein for the conveyance of the lands therein described and for the damages to any property of the grantor from which it was severed, or otherwise, due to the severance of said conveyed parcel or the manner of the construction of the improvement for which it was acquired as proposed by the State according to the maps and plans on file in the office of the Arizona State Highway Director in Phoenix, Arizona, except as stipulated hereinafter.

"Said conveyance and this instrument constitutes (sic) and contain the full agreement of the parties hereto pertaining to the lands acquired and damages to other land, if any, of the grantor therein."

Construction of the widening process commenced in August, 1965, and terminated on April 4, 1966. After completion of the project, plaintiff's property was 27 inches higher than the level of U.S. 66, causing automobiles to "high center" upon entering and leaving plaintiff's property.

Plaintiff testified that in his opinion this property had a value of $30,000.00 prior to the change of grade and a value of $12,000.00 after the change, resulting in damage to him in the sum of $18,000.00. Defendant's expert appraiser testified that in his opinion plaintiff's property had a value of $27,000.00 prior to the change in grade and a value of $18,000.00 after the change, resulting in damages to plaintiff in the sum of $9,000.00.

Prior to the commencement of this action, plaintiff sold the property for $15,000.00, reserving in himself the cause of action for inverse eminent domain.

Defendant raises the following issues on appeal:

(1) Whether plaintiff must first prove elements entitling him to rescission of the contract of right-of-way before he could seek damages for inverse eminent domain.

(2) Whether the trial court erred in its instructions to the jury.

(3) Whether the evidence was sufficient to sustain the verdict.

(4) Whether plaintiff was entitled to proceed against the defendant without first complying with jurisdictional prerequisites for a contract action against the State of Arizona.

(5) Whether plaintiff is entitled to interest and costs against the State of Arizona.

■ Defendant's first contention, and to which it devotes the major portion of its opening brief, is based on the argument that since the right-of-way contract between the plaintiff and the defendant, by its express terms, sets the amount of damages to be paid by the defendant to the plaintiff, plaintiff must properly plead an action for the rescission or reformation of that contract before proceeding in an action for inverse eminent domain. As we understand defendant's argument, it contends that plaintiff cannot plead or prove an inverse eminent domain action until it has pled and proved a cause of action for rescission or reformation of the right-of-way contract, and having failed to plead such an action, the trial court erred in denying its motion for a directed verdict at the close of plaintiff's case. We do not believe such to be the case. Plaintiff properly pled, by his complaint, an ac-

tion in inverse eminent domain. That an action in inverse eminent domain lies in Arizona for impairment of access is well settled. State v. Hollis, 93 Ariz. 200, 379 P.2d 750 (1963). Defendant's affirmative defense to such an action is its contract with the plaintiff.

As was stated in Sheridan Drive-In, Inc. v. State, 16 A.D.2d 400, 228 N.Y.S.2d 576 (1962):

" 'There is nothing either in the State statutes or decisions which requires a claimant in an appropriation case to first cause an "Agreement of Adjustment" to be judicially cancelled as a condition precedent to the filing in the Court of Claims of a claim based upon the appropriation. * * * [T]he petitioner is authorized to sue in the Court of Claims on [her] original claim which arose out of the appropriation of her property', if she claimed that the settlement agreement had been induced by fraud. 'The respondent, of course, may interpose the Agreement of Adjustment by way of avoidance * * * In such action the petitioner would be in a position, and it would be her burden, to allege and prove the invalidity of the agreement on whatever legal grounds she chose.' " 228 N.Y.S.2d, at 583–584.

■ We therefore hold that the plaintiff was not required to plead and prove an action in the rescission or reformation of contract as a condition precedent to filing his claim for inverse eminent domain.

Defendant next contends that the trial court erred in its instructions to the jury on the effect of the right-of-way contract and the burden of proof of plaintiff to overcome its effect. Defendant, at time of trial, objected to the court's failure to give twelve of its requested instructions.[1] These refused instructions dealt generally with the presumptions in favor of written

---

1. In the appendix to defendant's opening brief, defendant lists instructions Nos. 31, 38 and 39. A reading of defendant's objections at time of trial discloses that it made no objection to the court's refusal to give these instructions and therefore they will not be considered on an appeal. Rule 51(a), Rules of Civil Procedure, 16 A.R. S., (1956).

contracts, that mutual mistake may not rise out of negligence of one party, fraud and misrepresentation as they deal with rescissions of contracts, the burden of proof of these elements, the effect of A.R.S. § 33–401 subsec. A (1956) [2] and that no compensation may be had for inconvenience and hardship by reason of grade changes.

A reading of the instructions given by the court revealed that the presumptions surrounding the written contract, the negligence of one party to a contract and hardship were adequately covered by the court's instructions. Since there was no evidence to support the finding of fraud or misrepresentation on the part of defendant, and the case was tried on the theory of whether or not the parties contemplated the damages flowing from a change in grade, in other words, mutual mistake, the trial court did not err in refusing instructions on these elements. Also we find that the provisions of A.R.S. 33–401, subsec. A (1956) dealing with conveyances of land are not applicable to the facts here in inverse eminent domain. To hold otherwise would in effect abolish this type of action which in turn would violate the constitutional mandate that no property shall be taken or damaged without the payment of just compensation. Ariz. Const. art. 2, § 17, A.R.S.

Defendant's requested instruction No. 8 [3] purported to instruct the jury on the burden of proof of plaintiff in a contract action where fraud, deceit, misrepresenta-tion or mistake were alleged, that burden of proof being by clear and convincing evidence.

Admittedly, a party who seeks to overcome the effect, and set aside, a plain and unambiguous written contract must do so by clear and convincing evidence. Ranta v. Rake, 91 Idaho 376, 421 P.2d 747 (1967); Beaver v. Harris' Estate, 67 Wash. 2d 621, 409 P.2d 143 (1965); Herrera v. C. & R. Paving Co., 73 N.M. 237, 387 P.2d 339 (1963). However, defendant's requested instruction No. 8 introduced, by its term, the elements of fraud and deceit which, as we have previously pointed out, were not proper elements before the jury. Also the instruction would advise the jury that if plaintiff failed to "establish any essential elements of the plaintiff's claim by clear and convincing evidence" the jury would have to render a verdict for the defendant. This is an incorrect statement of the law. Insofar as the "taking" of plaintiff's property, to sustain his action in inverse eminent domain, and as to the proof of damages, plaintiff need only prove these elements by a preponderance of the evidence. Town of Williams v. Perrin, 70 Ariz. 157, 217 P.2d 918 (1950). It is only as to the proof necessary to overcome the effect of the written contract that plaintiff is required to move to a higher rung on the judicial ladder of proof.

If a requested instruction is in part correct and in part erroneous, the trial court is not required to separate the good

2. A.R.S. § 33–401, subsec. A provides as follows:
   "No estate of inheritance, freehold, or for a term of more than one year, in lands or tenements, shall be conveyed unless the conveyance is by an instrument in writing, subscribed and delivered by the party disposing of the estate, or by his agent thereunto authorized by writing."

3. Defendant's requested instruction No. 8 read as follows:
   "The burden is on the plaintiff in a contract action such as this for (sic) fraud, deceit, misrepresentation or mistake, is alleged or implied, to prove every element of his claim by clear (sic) con-vincing evidence. If the proof should fail to establish any essential element of the plaintiff's claim by clear and convincing evidence, the jury should find for the defendant. To prove by clear and convincing evidence means more than a preponderance but less than is required in a criminal case. In determining whether any fact in issue has been proved by clear and convincing evidence, the jury may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence, regardless of who may have produced them. If this evidence is evenly balanced, you must find for the defendant."

from the bad and it is not error for the trial court to refuse such an instruction. O'Rielly Motor Company v. Rich, 3 Ariz. App. 21, 411 P.2d 194 (1966); Hammels v. Britten, 53 Ariz. 112, 85 P.2d 992 (1939). This is especially true where counsel does not request that the objectionable portion of the instruction be deleted. Cf. McDowell v. Davis, 8 Ariz.App. 33, 442 P.2d 856 (1968), rev'd on other grounds, 104 Ariz. 69, 448 P.2d 869 (1968). Defendant's objection to the court on its refusal to give this instruction was as follows:

"The Defendant further objects to the Court's refusal to give instructions number seven through ten as again they go to the elements of fraud and misrepresentation of contract law, and it is the Defendant's position that the type of action tried presently, they should be given to properly instruct the Jury on the law of fraud and misrepresentation."

■ Moreover, the court gave its stock instruction on the general burden of proof in a civil action—by a preponderance of the evidence. No objection was made by the defendant to the giving of this instruction. As previously pointed out, this stock instruction, insofar as it went, correctly advised the jury as to the burden of proof required by the plaintiff to prove a portion of his cause of action. It is the general rule that where the court correctly instructs the jury as to the burden of proof of a party generally, it is not error to not instruct as to the burden of proof as to the specific element of that party's claim in the absence of a specific request for such an instruction. Burkett v. Dental Perfection Company, 140 Cal.App.2d 106, 294 P.2d 992 (1956); Schmidt v. Campbell, 136 Pa.Super. 590, 7 A.2d 554 (1939); *compare* Moss v. Shreve, 278 Mich. 665, 270 N.W. 826 (1937) *with* Homasote Co. v. Stanley, 104 Ga.App. 636, 122 S.E.2d 523 (1961), holding that the failure to instruct at all on burden of proof is not error where no request is made for such an instruction.

■ The trial court properly refused defendant's requested instruction No. 8 in the form presented. Defendant failed to properly point out to the trial court the correct portion of that instruction, and defendant made no objection to a giving of a preponderance of the evidence instruction. Under the circumstances of this case the court's failure to instruct as to a portion of the plaintiff's burden of proof was not reversible error in the absence of a proper request by counsel for such an instruction.

Defendant next contends that the court improperly instructed the jury as to the law as it deals with the damage provision contained in the right-of-way contract.

■ Defendant's argument in this regard is based mainly on its contention that plaintiff may not recover without first showing facts sufficient to justify rescission or modification of the written contract. While this is true as an abstract statement, this does not limit that proof to misrepresentation or fraud, as apparently contended by the defendant. Mutual mistake of the parties to a written contract makes that contract voidable. Restatement of Contracts § 502 (1932) provides:

"Even though there is no such mistake as would deprive the acts of the parties of any effect on their contractual relations under the rules stated in §§ 49, 71, 456, where parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be, except

(a) where the welfare of innocent third persons will be unfairly affected, or

(b) where the party seeking to avoid the transaction can obtain reformation

or performance of the bargain according to the actual intent of the parties when the transaction was entered into, or

(c) where it is possible by compensation to the party injured by the mistake to put him in as good a position as if the transaction had been what he supposed it to be, and such compensation is given."

If, when the parties agreed to the original right-of-way conveyance, both parties were incorrect in their belief that plaintiff's access would not be impaired by reason of a change in grade of U.S. 66, the conveyance was executed under a mutual mistake and would not constitute a bar to this action. See Cassorla v. State, 241 N.E.2d 365 (Ind.1968). This type of mutual mistake has been variously referred to in terms of whether the damages claimed were within the contemplation of the parties.

"* * * [T]he condemnation of a right of way or a right of way deed embraces by implication all damages necessarily incident to making the land effectual for the particular purpose for which it was acquired. * * * [H]owever, * * * an exception to the rule [exists] where the particular loss or damage was not *within the contemplation of the [parties]* and, if advanced, would have been rejected as speculative and conjectural." Morgan County v. Neff, 36 Tenn.App. 407, 411, 256 S.W. 2d 61, 63 (1953). (Emphasis supplied.)

See also Dansby v. Buck, 92 Ariz. 1, 373 P.2d 1 (1962); Milhous v. State Highway Dept., 194 S.C. 33, 8 S.E.2d 852 (1940); White v. Southern Ry. Co., 142 S.C. 284, 140 S.E. 560 (1927).

The trial court, while using the terms "not within the contemplation of the parties" and not specifically designating this in terms of mutual mistake, adequately presented the issue of plaintiff's theory to the jury. While we do not specifically approve the instruction employed by the court, a reading of the transcript does not reveal that defendant's counsel adequately brought its infirmities to the attention of the court.

■ The next contention of the defendant deals with the sufficiency of the evidence to justify the verdict and in particular that the damages suffered by the plaintiff were occasioned by his own act in placing fill on the front of the lot. However, a landowner is not prohibited from improving his property in reasonable contemplation of a proposed taking prior to condemnation proceedings being filed. Showalter v. State, 48 Ariz. 523, 63 P.2d 189 (1936). In the case here, the improvements placed on the property were erected and completed with the extension of the right-of-way in mind. The plaintiff carefully followed the instructions of defendant's personnel and placed his gas pumps twelve feet back from the new right-of-way line, even before he executed the right-of-way easement. Moreover, plaintiff testified that he placed the fill dirt on the property in reliance upon representations to him that the new right-of-way would be six inches higher than the existing right-of-way. Admittedly, plaintiff's access would not have been so greatly impaired had he not put in the fill dirt. However the rule, adopted in Showalter v. State, supra, is that

" '[k]nowledge of the fact that a public improvement is proposed which will result in the taking of his land does not deprive an owner from recovering the value of buildings subsequently erected, since even though preliminary steps have been taken the making of the contemplated improvement may be abandoned, and it would be highly unjust to deprive an owner of the right to make in good faith the best use of his property except at his peril.' "

Here, there was ample evidence of plaintiff's good faith and the defendant cannot rely on actions taken by the landowner on the property prior to a complaint being filed, to mitigate damages.

■ As to whether the parties were operating under a mutual mistake in con-

nection with the change in grade, the evidence is clear that the amount offered by the State and accepted by the defendant was based entirely upon a square footage amount. It is further clear that no damages were offered to plaintiff for access rights. After construction of plaintiff's service station and before signing the right-of-way contract, Lauman advised plaintiff that he would have good access after construction. Defendant's own expert testified that plaintiff's property had been damaged in the sum of $9,000.00. In view of all the circumstances we find there was sufficient evidence to submit to the jury the question of whether plaintiff's acceptance of $715.00 was made on the basis that both parties believed the change in grade would not affect access. Defendant also contends that the amount of the final judgment was not supported by the evidence. This is based on the argument that only two persons testified as to the damage—the plaintiff in the sum of $18,-000.00, and the defendant's expert in the sum of $9,000.00—and therefore a verdict in the sum of $11,000.00 was not justified. However, the verdict of $11,000.00 being within the range of possible verdicts, the jury's determination will not be overturned. Whitly v. Moore, 5 Ariz.App. 369, 427 P.2d 350 (1967).

■ Defendant's next contention is that plaintiff was prohibited from maintaining this action for inverse eminent domain without first complying with A.R.S. §§ 12–821 (1956) and 35–181.01 (Supp. 1969–70) (dealing with prerequisites for suits against the State of Arizona and claims against the State). This issue has previously been decided by the Arizona Supreme Court in inverse eminent domain actions adversely to the defendant. State v. Leeson, 84 Ariz. 44, 323 P.2d 692 (1958); State v. Hollis, 93 Ariz. 200, 379 P.2d 750 (1963)..

■ Defendant lastly contends that the trial court erred in allowing the plaintiff to recover interest and costs in this action. Defendant still argues that this is a contract action and not an inverse eminent domain action and therefore the provisions of A.R.S. § 12–1128 (Supp. 1969–70) allowing costs in an eminent domain action do not apply. We have previously held that defendant is incorrect in this contention and therefore hold that A.R.S. § 12–1128, supra, applies in inverse eminent domain cases and plaintiff, if successful, is entitled to his costs.

Whether interest can or cannot be collected in grade change cases is a question upon which there is a split of authority. See Annot., "Interest on Amount of Damages", 36 A.L.R.2d 337 (1954) wherein it is stated:

"* * * [I]n the majority of jurisdictions the viewpoint has been taken that interest, or an allowance of damages measured by interest, will be allowed as part of the damages sustained by a property owner by the change in the grade of a street or road." 36 A.L.R.2d, at 471.

■ While this is the majority view in condemnation actions, the allowance of interest has also been made in inverse eminent domain cases on the theory that it is a proper element in determining just compensation. United States v. Jordan, 186 F.2d 803 (6th Cir.1951), aff'd mem., 342 U.S. 911, 72 S.Ct. 305, 96 L.Ed. 682 (1952); Heimann v. City of Los Angeles, 30 Cal.2d 746, 185 P.2d 597 (1947), rev'd on other grounds, County of Los Angeles v. Faus, 48 Cal.2d 672, 312 P.2d 680, 684 (1957). Interest is also allowed in Arizona in eminent domain actions. A.R.S. § 12–1123, subsec. B (1956). We therefore hold that the trial court properly allowed interest. The court in this case allowed interest from the date of completion of the project. This is in accord with the majority rule. Chamberlain v. City of Des Moines, 172 Iowa 500, 154 N.W. 766 (1915); Peabody v. New York, N. H. & H. R. Co., 187 Mass. 489, 73 N.E. 649 (1905); see Annot. 36 A.L.R.2d, supra, at 472–3.

Judgment affirmed.

CAMERON and HAIRE, JJ., concur.

NOTE: Judge WILLIAM E. EUBANK, having requested that he be relieved from consideration of this matter, Judge JAMES DUKE CAMERON was called to sit in his stead and participate in the determination of this decision.