553 P.2d 1221

**Robert E. SCOTT and Lorna M. Scott, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY and Allstate Enterprises Management Company, Appellees.**

**No. 1 CA–CIV 3060.**

Court of Appeals of Arizona, Division 1.

July 1, 1976.

Rehearing Denied Aug. 3, 1976.

Petition for Review Denied Sept. 16, 1976.

Thur, Preston & Hungerford by Calvin C. Thur, Scottsdale, for appellants.

Johnson, Tucker, Jessen, Dake & Murphy, P.A. by Arthur M. Johnson, Phoenix, for appellees.

HOWARD, Chief Judge.

Appellants sued appellees for conversion and unlawful interference with a contractual relationship, both claims arising out of the cancellation of a homeowner's insurance policy. A jury trial resulted in a defense verdict.

Appellants present the following questions for review:

"1. Did the Trial Court err in denying plaintiffs' Motion for Directed Verdict and for Judgment Notwithstanding the Verdict on the issue of conversion when the evidence whoed [sic] a conversion by allstate [sic] Insurance Company as a matter of law?

2. Viewing the record as a whole, was the jury's verdict contrary to the law and evidence?

3. Did the Trial Court err in granting defendant's Motion for Directed Verdict on the issue of punitive damages, when there was evidence of forgery, conversion, aggravated, outrageous and wanton conduct?

4. Was Allstate properly permitted to describe to the jury, over objections, the reason that their salesman signed Mr. Scott's name to a legal document?

5. Did the Court err in permitting conclusionary testimony by Allstate's manager that their salesman's forgery was not 'within the scope of his employment'?

6. Did the Trial Court err in rejecting plaintiffs' evidence of Allstate's bad reputation, when reputation is an issue in the case, and Allstate presents evidence of their 'fine reputation'?

7. Did the Trial Court err in refusing plaintiffs' Instructions on the issues of conversion, ratification, punitive damages, wanton and reckless conduct, and on the unfair and deceptive insurance practices prohibited in the Arizona Statutes?"

The facts considered in the light most favorable to upholding the verdict of the jury and the action of the trial court in refusing to direct a verdict and refusing to enter a judgment notwithstanding the verdict are as follows.

In June of 1966, appellants were married and moved into a house on West Townley in Phoenix, Arizona, which was insured by appellee Allstate Insurance Company. Appellants also had their automobiles insured with Allstate. In August of 1968, appellants moved into another home. This home was covered by a homeowner's insurance policy issued by Travelers Insurance Company. In 1973, appellants bought a second-hand car and contacted an Allstate representative, Clay Boone, to secure coverage for the automobile.

The car was added to the insurance policy and Mr. Boone told appellants that he would like to get them total Allstate coverage. Nothing was done at that time, but in June of 1973, Mr. Boone contacted Mr. Scott about an Allstate homeowner's policy as a replacement for the Travelers Insurance policy which expired on August 10, 1973. In the course of this conversation Boone received and recorded information from Mr. Scott concerning the house which would only be elicited and recorded if a policy of insurance were going to be written. Boone wrote a policy of homeowner's insurance for appellants on the home, and cancelled the Travelers policy. The policy issued by Allstate was in the sum of $30,000 whereas the Travelers policy provided coverage on the house in the sum of $34,500. Western Savings and Loan Company, the mortgagee on the home, impounded certain amounts from the mortgage payments in order to pay the premiums on the Travelers Insurance Policy. In order for the mortgagee to accept the new insurance policy and transfer any sums in the impoundment account to Allstate in payment of the premium on the new Allstate policy, it was necessary to secure from appellant their written authorization. This written authorization was provided to the mortgagee when appellants were on vacation. The application contained the signature of a Robert E. Scott, but this signature had been written by Boone.

The husband returned from vacation on August 12, 1973, and his wife, Lorna, returned on August 15, 1973. They had received in the mail a copy of the new Allstate insurance policy and a notice of the

cancellation of the Travelers insurance policy. Mrs. Scott became quite upset and called Allstate to try to find out why the new policy was issued and the Travelers insurance policy had been cancelled. She told the supervisor of Allstate's office, Mr. Fulton, that she did not want Allstate insurance and that they had never authorized the cancellation of the Travelers policy or the issuance of the Allstate policy. Mr. Fulton talked to Mr. Boone who told him that Mr. Scott had definitely ordered the new Allstate policy. Mr. Fulton spoke with Mr. Scott who told him there was a possibility that Mr. Boone had been mistaken as to his intentions. Mr. Fulton spoke with Mrs. Scott and offered to rescind the Allstate policy but she stated that would not resolve the matter. He could not ascertain from her what she wanted the company to do. On September 11, 1973, the Scotts received from Allstate a refund check in the amount of money taken from the impound account at Western Savings and at the same time Western Savings received a reinstatement notice from Travelers reinstating the Scotts' Travelers insurance policy retroactive to August 10, 1972.

Boone was reprimanded by Fulton for signing the authorization for the substitution of the policies and the transfer of the impoundment account. Boone did not have the authority to sign Mr. Scott's name from either Scott or Allstate.

In their complaint appellants asked for punitive damages and compensatory damages for Mrs. Scott's pain and suffering from aggravation of a congenital neck problem which she claimed was the result of her worrying about whether her home was insured.

■ Appellants assert that as a matter of law the court should have directed a verdict in their favor on the conversion count, leaving for the jury only the issue of damages. Appellees contend that there were factual issues which proscribed direction of a verdict, in particular, an issue as to whether or not there was consent and whether Boone's actions could be attributed to them under the doctrine of respondeat superior. As far as the agency issue is concerned, the uncontradicted evidence shows as a matter of law that Boone was acting within the scope of his employment at the time he signed Mr. Scott's name to the authorization and secured the transfer of the funds to the account of Allstate Insurance Company. Appellees led the trial court to believe that if Boone had no authority to sign the authorization then Allstate could not be liable because Boone would then be acting beyond the scope of his authority and employment. This view of the law is incorrect. The test of liability of the principal for the agent's tortious acts is not whether the tortious act itself is a transaction within the ordinary course of the business of the principal, or within the scope of the agent's authority, but whether the service itself in which the tortious act was done was within the ordinary course of such business or was in the scope of such authority. *United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Humphreys*, 203 Va. 781, 127 S.E. 2d 98 (1962); 53 Am.Jur.2d Master and Servant Sec. 438; 3 C.J.S. Agency § 424, pp. 281–284; 57 C.J.S. Master and Servant § 555, pp. 266–267.

We quote with approval from 2 Mechem on Agency, 2nd Ed. Sec. 1960 the following definition of "scope of employment":

"In many cases no better definition can be given than the words themselves suggest. But, in general terms, it may be said that an act is within the course of the employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business. . . ."

It is clear that Boone was performing a service authorized by appellees and was acting for and on behalf of appellees.

When we turn our attention to the facts of the alleged conversion, we do find that there were material issues which required submission to the jury.

■ Conversion is any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein. *Western Coach Corporation v. Kincheloe*, 24 Ariz.App. 55, 535 P.2d 1059 (1975). Neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action. *Markel v. Transamerica Title Insurance Company*, 103 Ariz. 353, 442 P.2d 97 (1968). However, an act which would otherwise constitute a conversion may be precluded from having that effect by the plaintiff's consent to the act, either express or implied. *Rose Brother's Inc. v. City of Alva*, 356 P.2d 1083 (Okl.1960). A mistake can be a defense if the mistake is induced by the plaintiff. Restatement (Second) of Torts Sec. 244.

■ The conversion, if any, in this case would have consisted of the appropriation of the impound account to Allstate's use and benefit. The conversion did not consist of the unauthorized signing of the authorization. There was evidence from which the jury could have concluded that either Mr. Boone had the implied consent to transfer the impoundment account to Allstate upon the expiration of the Travelers insurance policy and effective date of the Allstate policy, or, that he was induced by Mr. Scott to mistakenly believe that the Scotts wanted him to take all steps necessary to accomplish the issuance of the Allstate policy. Thus the state of the evidence also precluded the trial court from granting appellants' judgment notwithstanding the verdict.[1]

Appellees were permitted, over appellants' objection, to ask Mr. Fulton whether he had inquired of Boone what his reasons were for signing Mr. Scott's name to the authorization. Mr. Fulton stated that Boone had told him that he was in a bind because he had written a policy and the mortgage company required the authorization before accepting it. He tried to get in touch with the Scotts but they were away and he signed the authorization because he felt he was acting in the best interest of his customer.

■ Mr. Fulton's testimony was offered by appellees to show why appellees did not fire Mr. Boone, a subject which was brought up by appellants in their attempt to prove that Allstate had ratified the action of Boone. Since the testimony was offered not to prove the truth of the words spoken but only to show why Mr. Boone was not fired, appellants' hearsay objection was not well taken and the court did not err in overruling the objection.

■ Appellants claim the court erred in permitting Mr. Fulton to testify, over their objection, that when Mr. Boone signed the authorization he was not acting within the scope of his employment. Although there may be a modern trend as far as expert witnesses are concerned relative to opinions upon an ultimate fact, see Udall, Arizona Law of Evidence, p. 35, such would not apply in this case since the opinion given by Mr. Fulton was not that of an expert witness. There is no doubt that the question called for an opinion on the ultimate fact to be decided by the jury. However, in this case, the error is not prejudicial since earlier, when Mr. Fulton was being cross-examined by appellants, his response to a question was that when he found out what Mr. Boone had done he told Mr. Boone that he was not acting within the scope of his authority. This an-

---

1. On the issue of the right to nominal damages for conversion, see *Commercial Credit Company v. Eisenhour*, 28 Ariz. 112, 236 P. 126 (1925), on the issue of punitive damages when only nominal damages are awarded, see 22 Am.Jur.2d Damages Sec. 242, p. 332 and *Winkler v. Hartford Accident and Indemnity Co.*, 66 N.J.Super. 22, 168 A.2d 418 (1961).

swer was not responsive, however, appellants made no objection on that ground and did not move to strike that portion of Mr. Fulton's answer from the record.

■■ Mrs. Scott testified on direct examination that the substitution of her policy for the Travelers policy upset her because she thought Allstate had a bad reputation and she felt insecure with such insurance on her home. Appellants in their cross-examination of Mr. Fulton asked him whether he knew Allstate's reputation. Mr. Fulton answered that he thought Allstate had a fine reputation. In order to reinforce Mrs. Scott's testimony and impeach the testimony of Mr. Fulton, appellants sought to introduce into evidence "Consumer's Reports" for the years 1971, 1972, and 1973 which showed Allstate as giving poorer than average service and further sought to introduce into evidence the fact that Allstate Insurance Company was being charged in the State of Florida with unethical practices. Assuming arguendo that somehow the reputation of appellees was put in issue in this case, evidence of specific acts or conduct is not admissible to prove reputation. *Central Iron & Coal Company v. Wright*, 20 Ala.App. 82, 101 So. 815 (1924); *Deevy v. Tassi*, 21 Cal.2d 109, 130 P.2d 389 (1942); 32 C.J.S. Evidence § 436, p. 47. There are instances when a particular trait of character is an actual issue and if the trait is susceptible of proof by specific acts, specific acts can be shown. See *Durbin v. Cassalo*, 321 S. W.2d 23 (Mo.App.1959). This is not, however, one of those cases. The court was therefore correct in excluding evidence of the alleged Florida action.

■■ As for the Consumer's Reports, and again, assuming arguendo the admissibility of evidence as to reputation, Allstate's reputation for service was not at issue in this case. Furthermore, the ratings in Consumer's Reports are no more than a personal or individual opinion and as such were not admissible to prove reputation. *In re Monaghan*, 126 Vt. 53, 222 A.2d 665 (1966). Lastly, reputation cannot be shown by written declarations made by third persons outside of the court proceedings. *Keyes v. Keyes*, 27 N.M. 215, 199 P. 361 (1921); 32 C.J.S. Evidence § 433 subparagraph d, p. 45.

■ Turning to the instructions given in this case, appellants complain that the court failed to give the second paragraph of their requested Instruction No. 3. No proper objection having been made in the trial court, any error is waived on appeal.

■ Appellants next contend that the trial court erred in refusing to instruct the jury on the theory of agency by ratification. We do not believe the evidence justified the giving of such instruction and the court did not err. The fact that Allstate did not discharge Boone does not constitute a ratification. In order to hold an employer liable for the consequences of an employee's tort on the ground of ratification, there must be clear evidence of the approval of the wrongful conduct. The continuance of employment alone is insufficient to show such approval. *Abraham v. S. E. Onorato Garages*, 50 Haw. 628, 446 P.2d 821 (1968). The undisputed evidence in this case shows that Mr. Boone was reprimanded by the company and that the Allstate policy was cancelled and the money returned. There was therefore no evidence of any ratification.

■ Appellants' contention that the trial court erred in refusing to give their requested Instruction No. 7, dealing with punitive damages, is moot in view of the fact that no nominal or compensatory damages were awarded. *Barker v. James*, 15 Ariz.App. 83, 486 P.2d 195 (1971).

Appellants' Instruction No. 9 is a "wrongful conduct per se" instruction. It instructed the jury that if certain statutes were violated by appellees then appellees would be guilty of unlawful or wrongful conduct as a matter of law and the only issue to be thereafter decided was whether such unlawful or wrongful conduct was the proximate cause of the injury or mental

distress. The proffered instruction contained the following first paragraph:

"Ordinarily it is a question of fact for the jury to decide whether a particular conduct was unlawful or wrongful. Such is not the case, however, where a person violates a specific rule made by the legislature to govern the kind of conduct in ·question. Where a person violates a statute or ordinance enacted for the safety or protection of persons or property, such a violation is unlawful or wrongful conduct as a matter of law. If such a violation is proven, it is your duty to find such conduct to be unlawful or wrongful regardless of any opinion you may have as to whether such conduct is wrongful or not."

The instruction then went on to designate certain laws in effect at the time which would constitute wrongful or unlawful ͵conduct per se. Among the statutes in the offered instruction were A.R.S. Sec. 20–442 and Sec. 20–443 [2] dealing with unfair or deceptive practices in the insurance business. Also included was A.R.S. Sec. 13–421(A)(1) which deals with the crime of forgery.

 We find no reversible error in the refusal to give the first paragraph of Instruction No. 9. Assuming, without deciding, that appellants were entitled to an instruction concerning the effect of a violation of the statutes dealing with insurance, we find no error in the court's refusal to give the portion requested since it purports to instruct on matters not raised by the evidence. If a requested instruction is in part correct and in part erroneous, the trial court is not required to separate the good from the bad and it is not error to refuse such an instruction. *State ex rel. Herman v. Mestas,* 12 Ariz.App. 289, 469 P.2d 855 (1970). This is especially true where counsel does not request that the objectionable portion of the instruction be deleted. *State ex rel. Herman v. Mestas,* supra.[3]

Appellants also cite the failure to give other requested instructions as error. In view of our discussion of the previous instructions these allegations of error are without merit.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. Sec. 12–120(E).

---

2. A.R.S. Sec. 20–442 states:
 "No person shall engage in this state in any trade practice which is prohibited by this article, or defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."
 A.R.S. Sec. 20–443 states:
 "No person shall make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
 1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon.
 2. Making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
 3. Making any misleading representation or any misrepresentation as to the financial condition of any insurer or as to the legal reserve system upon which any life insurer operates.
 4. Using any name or title of any policy or class of policies misrepresenting the true nature thereof.
 5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.
 \* \* \* "

3. Violation of a penal statute may constitute a civil tort. See, *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 521 P.2d 1119 (1974). See also, *Arnesen v. Raymond Lee Organization, Inc.,* 333 F.Supp. 116 (C.D.Cal.1971); *Whetzel v. Jess Fisher Management Co.,* 282 F.2d 943 (1960); *Jacobson v. New York, N. H. & H. R. Co.,* 206 F.2d 153, aff'd 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067. On the right to instructions for matters outside the pleadings but raised by the evidence, see *Singleton v. Dunn,* 71 Ariz. 150, 224 P.2d 643 (1950).