442 P.2d 856

Howard Eugene McDOWELL, Jr., Howard Eugene McDowell and Blanche C. McDowell, Appellants,

v.

Thomas M. DAVIS, a minor, C. E. Davis, Read Mullan Motor Company, an Arizona corporation, Michael W. Altamirano and the City of Phoenix, a municipal corporation, Appellees.

No. 1 CA–CIV 594.

Court of Appeals of Arizona.

July 2, 1968.

Rehearing Denied Sept. 4, 1968.

Review Granted Nov. 19, 1968.

Disapproved in Part Dec. 27, 1968.

See 104 Ariz. 69, 448 P.2d 869.

Moore, Romley, Kaplan, Robbins & Green, Phoenix, by Philip A. Robbins, Elias M. Romley, Marvin R. Kaplan and Craig ·R. Kepner, Phoenix, for appellants.

Browder, Gillenwater & Daughton, Phoenix, by Robert W. Browder and Stephen W. Connors, Phoenix, for appellees Davis.

Snell & Wilmer, Phoenix, by Mark Wilmer and John J. Bouma, for appellee Read Mullan Motor Co.

Kramer, Roche, Burch, Streich & Cracchiolo, Phoenix, by Daniel Cracchiolo and James D. Lester, Phoenix, for appellees Michael W. Altamirano and City of Phoenix.

DONOFRIO, Judge.

This appeal, involving a personal injury action resulting from an automobile accident, is by the plaintiffs McDowell, hereinafter referred to as plaintiff, from the granting of judgments in favor of certain of the defendants, and from the judgment based on the jury's verdict in their favor against the remaining defendants. The basis for the latter is inadequacy of damages.

At the time of the accident plaintiff Howard Eugene McDowell, Jr. was 16 years old and a passenger in a car driven by one of the defendants, Thomas M. Davis, 17 years of age. The vehicle was traveling south on 40th Street near its intersection with Sherman Street. The car was then involved in a collision with a City of Phoenix sanitation truck and trailer driven by defendant Altamirano. Witnesses to the accident included three City of Phoenix employees who were eating their lunch in a city truck parked near the scene of the accident, the city employee riding in the truck with Altamirano, and a girl walking down 40th Street, adjacent to the scene.

The testimony at trial established that the witnesses at the scene were preoccupied in watching the girl, and as a result their stories are a mass of contradictions. There was varying testimony that the Ford in which plaintiff was a passenger was traveling from 5 to 55 miles per hour, and that the truck was traveling anywhere from 15 to 45 miles per hour. The location of the collision was placed all over the intersection of Sherman and 40th Streets. The fact of whether or not the driver of the Ford had signaled for a left turn was also disputed. The expert testimony seems to establish the fact that the accident did occur in the intersection and that the Ford was four or five feet into the northbound lane of traffic. Whether the car had swerved across the line or was attempting a left turn is not certain.

The driver of the Ford automobile, Thomas M. Davis, was driving on a license which he had wrongfully obtained at the age of 15 by representing his age as being 16. His father had signed the application despite the discrepancy. The car belonged to Read Mullan Motor Company and had been furnished by Read Mullan to Davis' father who was an employee of the company. The car was used as a demonstrator and for the personal use of Mr. Davis and his family, the use being turned over to the employee by a lease arrangement.

It is undisputed that the injuries sustained by young McDowell are extremely grievous. At the time of trial his medical expenses alone had exceeded $38,000. Brain damage has left him with such mental and physical disabilities that he will need an attendant to care for him the rest of his life. Further, he probably will never be able to do any work sufficient to support himself. Testimony at the trial established that as a junior in high school his probable lifetime earnings, which were lost due to the accident, would have been over $200,000. In addition, there was testimony to the effect that the minimum amount which would be required to provide him with the necessary care for the rest of his life would be in excess of $273,000. The jury fixed damages in the sum of $163,117.28.

The questions presented by plaintiff on appeal are: first, whether the trial court was in error in instructing the jury that an act or omission cannot be a proximate cause if it contributes only slightly or possibly to the result; second, whether the sudden emergency instruction which was given by the court was proper; third, whether the trial court was in error in directing a verdict in favor of Read Mullan Motor Company; and finally, whether the verdict of the jury was wholly inadequate.

**36**

## I.

 The Court instructed the jury as follows:

"Ladies and gentlemen, another test of proximate cause recognized by our law may be helpful to you. Was the negligent act of the party under consideration a material element or a substantial factor in producing the injury? *An act or an omission cannot be a proximate cause if it contributes only slightly or possibly to the result,* for a proximate cause is one which is a material element or a substantial factor in causing the injury." (Emphasis supplied.)

Plaintiff objected to the language of the above instruction on the ground that it is telling the jury that a defendant cannot be held liable for his negligence if such negligence contributes only slightly to the accident. Plaintiff does not dispute the "substantial facts" test for proximate cause but argues that the instruction is an erroneous statement of that doctrine. He sets forth that it is well settled in Arizona that any negligence which contributes in any degree to an accident is actionable if committed by defendant and is a bar to recovery if committed by a plaintiff. Mantovani v. Green, 90 Ariz. 376, 368 P.2d 448 (1962); Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934 (1961). In these cases the court stated that negligence which contributes "in any degree" or "in the slightest degree" is a bar to plaintiff's recovery as contributory negligence. We do not believe the instant instruction runs contra to these opinions. In holding that "any degree" of contributory negligence warranted an instruction informing the jury that it should find for defendant, the court in *Mantovani* did not repudiate the well known principle that in order for negligent acts or omissions to constitute "contributory negligence", it must be proven that plaintiff's acts or omissions proximately caused his injury. It is elementary that a plaintiff cannot be denied recovery for his negligence unless such negligence is the proximate cause of

his injury. See Salt River Valley W. U. Assn. v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937); Stearman v. Miranda, 97 Ariz. 55, 396 P.2d 622 (1964); and Serrano v. Kenneth A. Ethridge Contracting Co., 2 Ariz. App. 473, 409 P.2d 757 (1966). Likewise, a defendant cannot be held legally liable if his negligent acts or omissions are not a proximate cause of the plaintiff's injuries. A reading of the instruction indicates that it was directed to this rule of law.

The instruction is Arizona Uniform Jury Instruction No. 5–A prepared by the State Bar Committee on Uniform Jury Instructions. According to the committee, it was written to be used in explaining to a jury the difficult concept of proximate cause. A note by the committee reads:

"This instruction is included as a possible supplement to No. 5. The 'material element-substantial factor' test is believed by many authorities to be helpful in explaining to a jury the difficult concept of proximate cause."

Arizona has adopted the "substantial factor" test for proximate cause, Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937), and this instruction, we believe, when considered with all the others, is about as adequate an explanation of this difficult term or doctrine as can be made.

 Instructions must be considered as a whole and read in conjunction with all the instructions given. Ieronimo v. Hagerman, 93 Ariz. 357, 380 P.2d 1013 (1963). In the instant case we find the trial court correctly instructed that it is important to recognize that proof of negligence by itself will not establish a claim or defense unless that negligence was one of the proximate causes of the injury. The court went on to define the word "proximate" as meaning near or direct as distinguished from a remote or indirect or insubstantial cause. It further stated that the plaintiff must establish not only that the defendants or either of them were negligent, but that such negligence contributed as a proximate cause of

the accident. It thereafter gave the usual instruction:

"* * * The proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies. This does not mean that the law seeks and recognizes only one proximate cause of an injury consisting of only one fact, one act, one element of circumstances or the conduct of only one person. * * *"

Following this, the court gave the instruction in question. We do not believe the jury could have been misled in any way as to the law which holds that any negligence which contributes in any degree to an accident is actionable if committed by a defendant and is a bar to recovery if committed by a plaintiff, nor of the law which provides that when two or more defendants are charged with concurrent negligence, it matters not whether one was more negligent than the other since they are both liable if their own negligence contributed in any degree to the accident. There is no one method to explain proximate cause as Arizona has accepted it, and in reading all the instructions as a whole, we find the law regarding proximate cause to have been properly set forth, and in a way that it was not confused with the other principles of law.

## II.

Plaintiff objects to the trial court's instruction on the sudden emergency doctrine on the grounds that it did not sufficiently emphasize the rule which holds that it should apply only to a driver who is himself free from negligence. Although the instruction does read, "a person who, *without negligence on his part,* is suddenly and unexpectedly confronted with peril arising from either the actual presence of the appearance of imminent danger * * *", this wording has been held to not clearly convey the above emphasized qualification of the sudden emergency doctrine. Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962). In *Quinet* the Supreme Court construed a similar instruction and found it wanting in that it did not properly emphasize the condition on the sudden emergency doctrine— that it only applied to a person who is free from negligence in causing the situation.

It is significant to note that although the Supreme Court in *Quinet* found the instruction wanting, it nonetheless held that the error was not prejudicial. It is to be noted that in Worthington v. Funk, 7 Ariz.App. 595, 442 P.2d 153 (decided by this Court June 12, 1968), we recognized that in the future it is best to follow the model instruction set forth therein which resulted from the Supreme Court's holding in *Quinet*. We do not deem it necessary, however, to pass upon the question raised of the court's failure to use the appropriate language in this case for the reason that plaintiff during the trial did not preserve this question for appeal. When the trial judge announced his selected jury instructions all parties to the case had an opportunity to enter their exceptions to the instructions; in fact, the parties are required to inform the trial judge at that time of possible errors so that he might have an opportunity to correct them. Michie v. Calhoun, 85 Ariz. 270, 336 P.2d 370 (1959). Plaintiff's counsel made the following objection to the instruction:

"Plaintiffs except and object to the giving of Instruction No. 8 upon the ground that it has no application to this case, and is therefore an incorrect statement of the law as applied to this case. It is an accurate statement. It may be incorrect, but there was no sudden urgency or peril confronting the driver Altamirano."

Plaintiff apparently did not raise the ground that the instruction did not properly emphasize that the sudden emergency doctrine is not applicable where the

party seeking to benefit by it brought about the sudden emergency by his own negligence. Under Rule 51(a), Rules of Civil Procedure, 16 A.R.S., no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.* In Rodgers v. Bryan, 82 Ariz. 143, 309 P.2d 773 (1957), the Supreme Court reiterated that where an instruction is deemed incomplete, a request should be made for an instruction fully covering the situation to save error. The objecting party has a duty to ask for a complete instruction and a failure to do so precludes any complaint concerning the instruction given.

### III.

The third issue to be considered revolves around plaintiff's contention that the trial court erred in not allowing the question of Read Mullan Motor Company's liability for the negligence of Thomas M. Davis, hereinafter referred to as Tom Davis, to go to the jury. Plaintiff relies on two grounds in urging this point.

One of the grounds plaintiff urges to attach liability to Read Mullan for Tom Davis' acts is that a corporate car owner who furnishes an automobile for the benefit of his employee and family is liable under the family car doctrine. We have no difficulty in finding that this doctrine is available to the plaintiff in an action against C. E. Davis, the father of Tom Davis; however in attempting to apply the doctrine to a corporate owner by reason of the fact that it permits its employee and family to use a vehicle under a lease arrangement with the employee presents a much more difficult question.

Plaintiff's position is that under the policy of the family car doctrine which has been followed in Arizona since Benton v. Regeser, 20 Ariz. 273, 179 P. 966 (1919), the doctrine is applicable to corporate owners. In support of the contention he cites Durso v. A. D. Cozzolino, Inc., 128 Conn. 24, 20 A.2d 392 (1941). He points out that the doctrine was to make the owner of a motor vehicle responsible for its negligent operation when placed in the hands of an irresponsible party and under the reasoning of *Cozzolino* the corporate employer may be held liable. We do not agree.

"As a general rule, the owner of a motor vehicle may not be held liable under the family purpose doctrine for the negligent operation of his vehicle by an employee whom he has permitted to borrow such vehicle for the latter's own pleasure. The fact that the employee or servant boards in the home of his employer does not make him a member of the employer's 'family' within the meaning of the family purpose doctrine. It has been said that in order to extend this doctrine to an employer with whom an employee makes his home, there being no ties of blood between them, it is essential to show that the employer was under obligation to support the employee; that the motor vehicle causing the injury was maintained by the employer; that the employee had general authority to use it for his own convenience; and that he was using it for the purpose for which it was maintained at the time his actionable negligence arose." 8 Am.Jur.2d Automobiles & Highways Traffic § 593.

See also Higgans v. Deskins, 263 S.W.2d 108, 52 A.L.R.2d 346 (Ky.1953); Annot. 64 A.L.R. 844 at 878, 100 A.L.R. 1030, 132 A.L.R. 981 at 993; Hogg v. MacDonald, 128 Neb. 6, 257 N.W. 274, (1934).

We do not believe that the family purpose doctrine was intended to apply to relationships other than the family relationship. For Arizona cases touching on this point, see Johnston v. Hare, 30 Ariz. 253, 246 P. 546 (1926); Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965 (1938); Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463 (1956). We believe, also, the *Cozzolino* case can be distinguished on the basis of the fact that the father and mother of the family owned most of the stock of a completely family held corporation. The doctrine has no application to the facts of this case.

The second ground to include Read Mullan as a defendant and hold him liable for Davis' negligence is based on A.R.S. § 28–420 which reads as follows:

"Every owner of a motor vehicle causing or knowingly permitting an unlicensed minor under the age of eighteen years to drive such vehicle upon a highway, and any person giving or furnishing a motor vehicle to such unlicensed minor, shall be jointly and severally liable with such minor for any damages caused by the negligence or willful misconduct of minor in driving such vehicle."

Plaintiff argues that if under this statute there is any evidence that Read Mullan caused, knowingly permitted, gave or furnished the automobile to Tom Davis, the court erred in directing a verdict for Read Mullan and seeks to set forth how the facts of this case bring Read Mullan within the statute. We cannot agree with plaintiff's application of the facts. We find two serious questions must first be answered before attaching Read Mullan's liability to the statute—first, whether Read Mullan *knowingly permitted* Tom Davis to drive the automobile, and second, whether Tom Davis was an "unlicensed" minor at the time of the accident.

Granted that Read Mullan allowed its employee, Mr. Davis, the use of the demonstrator vehicle and that it was common knowledge and impliedly known to Read Mullan that the family of this employee was allowed the use of such car, we find, however, no evidence that Read Mullan knowingly permitted the son as an unlicensed minor to drive the car. As to Tom Davis, there is no evidence that Read Mullan had any knowledge of the circumstances under which his license was issued. The evidence also would indicate that Read Mullan could not have known that an unlicensed driver would be allowed to drive the vehicle, regardless of what precautions or discretion it used in screening its employee as to the use of the car. The Legislature by the statute intended to impose liability on people who with actual knowledge allow an unlicensed driver to drive on the highways and endanger other people. In Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470 (1955), our Supreme Court analyzed the language of the statute we have set forth, supra, as follows:

"These words, 'giving or furnishing', imply affirmative action as distinguished from the word 'permit' which carries the connotation of passive acquiescence. Clearly the legislature intended that the owner, having the right to possession, could incur liability by the failure to exercise the right to possession under circumstances from which consent could be implied, whereas a person who is not the owner and hence ordinarily not having the right to grant or withhold possession or the right to exercise control, even though agreeable to the use of the motor vehicle, must commit some positive act beyond mere consent in the sense of supplying or providing the vehicle."

There is no evidence that Read Mullan affirmatively acted to "give" or "furnish" this vehicle to Tom Davis. Read Mullan did not "cause" Tom Davis to operate the vehicle, and there is no evidence that it knowingly permitted Davis as a person unqualified, to drive the car.

We next pass upon the question as to whether or not Tom Davis was actually an unlicensed driver as it related to the liability of Read Mullan under the statute. Davis had a wrongfully obtained license. However, we cannot agree with plaintiff's contention that a license issued as in Davis' case in violation of A.R.S. § 28–413 is void. Neither § 28–420, nor any of the related sections on the subject, purport to make a license so obtained void. The applicable statutes merely provide that a license obtained in violation of the law *may* be "cancelled" by the Department, and where the licensee has actually been convicted of perjury in making application for a license the Department must "revoke" the license. See A.R.S. § 28–441 et seq. and § 28–471 et seq. We are also unable to find any evidence to support the propo-

sition that Read Mullan had knowledge of Davis' wrongfully obtained license. The trial court was correct in its ruling.

The final contention on appeal is that in light of the evidence showing the damages for medical expenses, future care and loss of earnings to be in excess of $500,000, the jury's verdict of $163,117.28 is wholly inadequate. The appeal is also from the court's denial of plaintiff's motion for new trial on the issue of damages.

█ The law is well settled that the appellate court should not disturb a verdict in a personal injury action except for the most cogent reasons. Ross v. Clark, 35 Ariz. 60, 274 P. 639 (1929); Meyer v. Ricklick, 99 Ariz. 355, 409 P.2d 280 (1965). We believe the following language in Paustenbaugh v. Ward Baking Co., 374 Pa. 418, 97 A.2d 816 at 818 (1953) is in line with our Supreme Court's holdings and appropos to the present situation:

> "The guide for determining whether a new trial should be granted for inadequacy of verdict has often been set forth in the cases. 'Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion * * *. When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise even greater caution in reviewing* its action. It was said by President Judge Rice in Palmer v. Leader Publishing Co., 7 Pa.Super. 594, 598: "The power to grant a new trial because of the inadequacy, as well as the excessiveness, of the damages allowed by the jury is undisputed, but this power is much more rarely exercised in the former than in the latter case. If such caution is properly exercisable by the trial court, much more cautiously should an appellate court proceed where the trial court, after a conscientious review of the case, has refused to set aside the verdict. No mere difference of opinion, nothing short of a clear conviction, compelled by the evidence, that the jury must have

been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence, will justify an appellate court in declaring that the trial court was guilty of an abuse of discretion in refusing a new trial for inadequacy of damages where neither the evidence in the particular case nor the law applicable thereto furnished any definite standard by which they might be measured, and the jury had no other guide in arriving at the amount to be awarded but pure conjecture." ' Coleman v. Pittsburgh Coal Co., 158 Pa.Super. 81, 85, 43 A.2d 540, 542. 'Indeed, it would seem that it is only where the verdict was *merely nominal* that the appellate courts have looked askance on a refusal of the trial court to set it aside and grant a new trial'. Carpenelli v. Scranton Bus Company, 350 Pa. 184, 188, 38 A.2d 44, 46. (Italics supplied.) 'It is the province of the jury to appraise the worth of the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to damages which were proven, it is not the function of this Court to substitute its judgment for that of the jury'. Perzak v. Coulter, 171 Pa.Super. 475, 478, 90 A.2d 256, 257."

It is to be noted that the evidence relating to damages relied upon so heavily by plaintiff was opinion evidence offered by two doctors on behalf of plaintiff. The jury was instructed, without objection, as follows:

> "You are instructed, ladies and gentlemen, that the rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case. You should consider such expert opinion and should weigh the rea-

sons, if any, given for it. You are not bound, however, by such an opinion. Give to it the weight to which you deem it entitled whether that be great or slight, and you may reject it if in your judgment the reasons given for it are unsound."

Although we might have rendered a different verdict we do not believe the verdict is so unreasonably low as to present a clear case of injustice. The trial court did not abuse its discretion in denying the motion for a new trial.

Judgment affirmed.

CAMERON, C. J., and STEVENS, J., concur.