868 P.2d 1059

**STATE of Arizona, Appellee,**

v.

**Louie Ortiz RIVERA, Appellant.**

No. 1 CA–CR 92–1762.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 20, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

Paul Hunter, Yuma, for appellant.

OPINION

GRANT, Judge.

Louie Ortiz Rivera (defendant) was found guilty by a jury of aggravated driving while under the influence of intoxicating liquor ("DUI"), a class five felony. The trial court imposed a seven-month term of unsupervised probation, and as a condition of probation, defendant was ordered incarcerated for not less than six months with the Department of Corrections with credit for six days time served. Timely notice of appeal was filed.

*FACTS*

On the evening of September 18, 1991, the defendant was at the Hungry Hunter Restaurant in Yuma, Arizona, where he had a few beers at the bar. At some point in the

evening, he was refused service because he was staggering when he walked, his speech was slurred, and his eyes were red and glassy. The assistant manager advised the defendant to get something to eat and not to drive, offering to call him a cab. The defendant told the manager that someone was picking him up in the parking lot, and he left the restaurant.

Thereafter, the defendant got into his car, backed into a parked vehicle, then into some landscaping, and then pulled forward, striking another parked vehicle as he drove away. A description of the vehicle and the direction of travel were given to the police by another restaurant patron who had witnessed the incident. A short time later, the defendant rear-ended another vehicle that was stopped at a red light at a nearby intersection. After both men exited their vehicles, the driver of the stopped vehicle noticed that the defendant was weaving when he walked, his speech was very slurred, and he generally appeared to have been drinking. After the two men pulled off the road, they exchanged information and then the other driver took the defendant's car keys and told him to walk home.

The police officer who had responded to investigate the hit-and-run incident at the Hungry Hunter was also called to the scene of the later rear-end collision. The defendant was approached by the police as he stood next to a parked and damaged vehicle which matched the description of the earlier hit-and-run vehicle. The defendant initially identified himself as Fred Sanchez, but later produced a temporary driver's license in the name of Louie Ortiz Rivera. The officer detected a strong odor of alcohol on the defendant and noticed that he was unstable on his feet, his eyes were watery, and his speech was slurred. After the defendant unsatisfactorily performed several field sobriety tests, he was placed under arrest for DUI.

A motor vehicle department investigator testified at trial to lay the foundation for the admission in evidence of several certified motor vehicle records, including: (1) defendant's first application for a driver's license under his legally changed name, Daniel Ortiz Riv-

era, dated August 26, 1981, (2) two orders of revocation of the driver's license for Daniel Ortiz Rivera, the last of which was dated January 21, 1987, and (3) defendant's second application for a driver's license under his birth certificate name, Louie Ortiz Rivera, Jr., dated December 20, 1988, which demonstrated defendant's failure to list the name under which he was previously licensed and also his denial of the revocation of that license.

The defendant testified at trial about the circumstances surrounding his application for a driver's license in his birth name, admitting that he had lied about his previous license revocation for insurance purposes. He testified that he did not inform the license examiner that he had a revoked license under the name of Danny Rivera, because he "figured he would have known. He works there." The defendant admitted that he had received the revocation notices contained in State's Exhibit # 5 and that he knew his license had been revoked. He also admitted that he was intoxicated on September 18, 1991, and that he had been driving the vehicle involved in the collisions that night. The jury found the defendant guilty as charged.

Defendant raises two issues for this court's review:

1) Did the trial court err in denying the motion for directed verdict on the element of defendant's license revocation since defendant had a valid license on the date of the offense?

2) Did the trial court err in denying defendant's requested jury instruction on the legal effect of a driver's license obtained upon a deliberate false statement by the applicant?

## DISCUSSION

### Directed Verdict

The focus of the defendant's argument on appeal is that his conviction for aggravated DUI is defective since he was driving on a valid, unrevoked driver's license on the date of his DUI offense. Defendant maintains that the license was valid, notwithstanding the false statement he made within the application filed to obtain that license.

In support of his argument, defendant relies entirely upon the opinion in *McDowell v. Davis*, 8 Ariz.App. 33, 39, 442 P.2d 856, 862 (1968), a decision by this court in the context of a personal injury action. The holding in *McDowell* is inapplicable to this case and will not support a reversal of a DUI conviction.

In *McDowell v. Davis*, the court was presented with a negligence cause of action for injuries sustained in an automobile accident. *Id.* at 35, 442 P.2d at 858. The defendant driver was a minor who had lied about his age on his driver's license application, with his father's knowledge. At the time of the collision, the minor was driving his father's company car. *Id.* The injured plaintiff sought to recover damages from the father's company and vehicle owner under Ariz.Rev. Stat.Ann. ("A.R.S.") section 28–420 (1989), which imposes joint and several liability for damages in negligence upon a motor vehicle owner who *knowingly* permits an *unlicensed* minor to drive his car. (Emphasis added.)

In deciding whether the trial court had correctly directed a verdict on behalf of the company, the *McDowell* court found that the minor's wrongfully obtained license was not void, but was subject to cancellation by the Department of Motor Vehicles. *Id.* at 39, 442 P.2d at 864. More importantly, however, the court found no evidence to demonstrate that the company had any knowledge of the minor's wrongfully obtained license, and therefore, the directed verdict was proper. *Id.* at 40, 442 P.2d at 865.

The *McDowell* holding does not suggest that fraudulently obtained licenses are valid for all purposes. Such a reading would be particularly ludicrous in an action, such as this one, involving fraud upon the very entity from which the license was obtained.

Contrary to defendant's contention on appeal, civil law principles are not always applicable in the context of a criminal case. *See State v. Reynolds*, 171 Ariz. 678, 682, 832 P.2d 695, 699 (App.1992) (civil concepts and principles from the Uniform Commercial Code and from tort law do not fit into the framework of the criminal law in the area of restitution). Even if the holding in *McDowell* were not so narrow, the court would not have to look beyond the body of criminal case law for a resolution of the issue in this case.

As correctly pointed out by the state, the "license" itself is simply a piece of paper that represents some evidence of the privilege to drive a motor vehicle granted by the Arizona statutes. *State v. Mitchell*, 136 Ariz. 386, 388, 666 P.2d 486, 488 (App.1982), *aff'd*, 136 Ariz. 364, 666 P.2d 464 (1983). Thus, it is the suspension or revocation of the privilege to drive, and not the physical cancellation of the license, which is at the core of the offense of aggravated DUI. *Id.*

The license and accompanying privilege to drive when revoked by the state remains revoked indefinitely and will not be renewed or restored until the cause of the revocation has been removed by the application and issuance of a new license *as provided by law.* A.R.S. §§ 28–402(5); 28–448(B) (1989); *State v. Stidham*, 164 Ariz. 145, 147, 791 P.2d 671, 673 (App.1990).[1] The renewed application by

---

1. At the time of trial **A.R.S. section 28–402(5) provided that:** "Revocation" means that the driver's license and privilege to drive a motor vehicle on the public highways are terminated and shall not be renewed or restored, except that an application for a new license may be presented and acted upon by the department after the expiration of at least one year after the date of revocation.

At the time of trial **A.R.S. section 28–448(B) provided that:** A person whose license or privilege to drive a motor vehicle on the public highways has been revoked shall not be entitled to have the license or privilege renewed or restored unless the revocation was for a cause which has been removed, except that after the expiration of one year from the date on which the revoked license was surrendered to and received by the department the person may make application for a new license as provided by law, but the department shall not then issue a new license unless and until it is satisfied after investigation of the character, habits and driving ability of the person that it will be safe to grant the privilege of driving a motor vehicle on the public highways.

As recently amended **A.R.S. section 28–448(B) now reads in relevant part that:** A person whose license or privilege to drive a motor vehicle on the public highways has been revoked may apply for a new license as provided by law after the cause of revocation is removed or after expiration of the revocation period prescribed by law, but the department shall not then issue a new license unless it is satisfied after investigation of the character, habits and driving ability of the person that it will be safe to grant the privilege of driving a motor vehicle on the highways. Laws 1993, ch. 178, section 21, eff. April 20, 1993.

the defendant, which contained an admittedly false representation, does not satisfy the statute's requirements and did nothing to restore the defendant's privilege to drive or remove the cause of his license revocation.

At trial, the state was required to prove that the defendant drove a motor vehicle under the influence of alcohol while his license was revoked and that he knew or should have known of the revocation. *State v. Williams,* 144 Ariz. 487, 489, 698 P.2d 732, 734 (1985). The defendant admitted that he was intoxicated and that he had been driving the vehicle involved on the night of the offense. He also admitted that he knew his license had been revoked, and that he had lied about the revocation on his application for a new license. The defendant presented some evidence at trial that he had an unrevoked license in his possession on the night of the offense. On the basis of all of the evidence produced, however, it is clear that the jury could have reasonably concluded that defendant's revocation remained in effect and that the wrongfully obtained license in his possession did not alter that fact. *State v. Stidham,* 164 Ariz. at 146, 791 P.2d at 672. The trial court's denial of a directed verdict was not an abuse of discretion.

### Jury Instructions

At the close of the case, defense counsel requested that the trial court read the jury an instruction that he had drafted based upon his interpretation of the holding in *McDowell,* as follows:

> You are instructed that a deliberate false statement in a driver's license application form is a wrongful act by the applicant.
>
> You are further instructed that a driver's license which is issued upon an application which contains a deliberate false statement is a wrongfully obtained license.
>
> You are further instructed that a wrongfully obtained license is not void but is a license which may be cancelled by the Department of Motor Vehicles. In other words, a wrongfully obtained license is voidable. Not void.

The state also requested an instruction on this issue, and the trial court took portions of both and gave the following modified instruction to the jury:

> A driver's license which is issued upon an application which contains a deliberate false statement by the applicant is not a valid driver's license.
>
> A driver's license which has been revoked remains revoked until a new, valid license is issued.

■ The trial court is not required to read instructions which are not correct statements of the law or which do not fit the facts of the case. *See State v. Rivera,* 152 Ariz. 507, 517, 733 P.2d 1090, 1100 (1987) (proffered jury instruction that misstates the law or has the potential to mislead or confuse the jury is properly rejected by the trial court). The legal concepts regarding "void" and "voidable" documents were irrelevant to the facts of this case and could easily have misled and confused the jury.

■ The instruction given by the trial court was an adaptation of a similar instruction approved by this court in *State v. Stidham.* The added language in the instant instruction was taken from an instruction specifically requested by the defendant, and thus, reversal would not be mandated, even if the instruction were erroneous. *Cf. State v. Diaz,* 168 Ariz. 363, 366, 813 P.2d 728, 731 (1991) (fundamentally erroneous jury instruction injected into the record by defendant's request cannot serve as a basis for the reversal of his conviction). However, under the circumstances of this case, the instruction given was legally correct.

The defendant's contention that the instruction somehow lessened the state's burden of proof by taking an element of the offense from the jury's consideration is without merit. The certified Motor Vehicle Department documents and the defendant's own admissions satisfy the state's burden to prove that the defendant's license had been revoked and had not been validly reissued. The defendant was free to rebut, and in fact did attempt to rebut, the state's proof with evidence that the revocation had ended with the restoration of a valid license. It was not unfair or improper to require the defendant to bear such a burden. *Stidham,* 164 Ariz. at

147, 791 P.2d at 673. The defendant's inability to meet that burden with proof of a wrongfully obtained driver's license did not affect his right to a fair trial.

We have reviewed the record for fundamental error pursuant to A.R.S. section 13–4035 and have found none. For all of the foregoing reasons, we affirm the conviction and sentence.

GERBER, P.J., and FOREMAN, J., concur.

NOTE: The Honorable John Foreman, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Article VI, Section 3 of the Arizona Constitution.