NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| KASEY L.D. MALAY,<br><br>                              Appellant,<br><br>                    v.<br><br>STATE OF ALASKA,<br><br>                              Appellee. | Court of Appeals Nos. A-14189 &<br>A-14190<br>Trial Court Nos. 3PA-20-02151 CR<br>& 3PA-20-02805 CR<br><br>O P I N I O N<br><br>No. 2825 — March 6, 2026 |

Appeal from the District Court, Third Judicial District, Palmer, Amanda L. Browning, Judge.

Appearances: Lindsey Bray, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Scott Crawford, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge ALLARD.

Kasey L.D. Malay was convicted two times of driving while license revoked (DWLR) following two separate jury trials.[1]

---

[1]    AS 28.15.291(a).

In this consolidated appeal, we are asked to decide whether a driver's license that has been revoked by a court or the Department of Motor Vehicles (DMV) remains in "revoked" status for purposes of a DWLR prosecution under AS 28.15.291 even after the specific period of revocation ordered by the court or the DMV has ended. For the reasons explained here, we conclude that a revoked driver's license remains in "revoked" status for purposes of a DWLR prosecution until the person takes the affirmative steps necessary to have their license reinstated and their license is reinstated. Because this is essentially the definition that was used at both of Malay's trials, we affirm her convictions.

*Background facts and proceedings*

Malay had her license revoked four times: first for driving under the influence (DUI) in 2010 and then three times for driving while license revoked in 2012-2013. For each of these license revocations, a ninety-day revocation period was imposed on Malay, during which she could not apply for reinstatement of her license.

In 2020, after the last ninety-day revocation period had expired, Malay was stopped by the police in three different traffic stops: one in May, one in June, and one in December. Malay had not reinstated her revoked license by the time of any of these stops. The State charged Malay with one count of DWLR for each of these three stops, and Malay proceeded to three separate jury trials for each instance of driving.

In Malay's first trial, regarding the traffic stop in May 2020, the State called an office manager from the Palmer Department of Motor Vehicles, Donald Tennison, to testify. Tennison explained that when a driver's license is revoked, the DMV views the license as revoked even after the specific period of revocation ordered by the court or the department has ended. According to Tennison, the license remains in revoked status indefinitely until it is actually reinstated — *i.e.*, until the driver takes the steps necessary to reinstate their license, applies for a new license, and the DMV

reinstates the license. He testified that Malay's license was in revoked status in May 2020.

The State also called the police officer who conducted the traffic stop in May 2020, Officer Jason Holmgren. The State played a few minutes of the audio recording of the traffic stop, including Holmgren's dialogue with Malay during the stop. Some of this audio clip is indiscernible because of background noises, but Malay can be heard explaining that her license was revoked due to a prior DUI because she had a blood alcohol content of .086 percent. She told the officer, "I did my ASAP [Alcohol Safety Action Program]. I did everything I was supposed to do except — " and then the rest of her statement was drowned out by background noises. The State also introduced this audio clip as an exhibit at trial.

Malay introduced as a defense exhibit her ALVIN (Alaska License Vehicle Information Network) report, which showed her prior license revocations. Each revocation had a start date and an ending date marking the ninety days of revocation. Her most recent revocation displayed a start date of "8/20/2013" and an ending date of "11/17/2013." On cross-examination, Tennison explained that a person is eligible to have their license reinstated after the ending date of a period of revocation. On re-direct examination, Tennison confirmed that, under DMV policy, a license remains revoked for purposes of a new DWLR conviction until the driver takes all of the required steps to reinstate the license.

At the close of the State's evidence, Malay moved for a judgment of acquittal. Malay argued that she was guilty of the lesser offense of driving without a valid license (an infraction) but that there was insufficient evidence that her license was in revoked status at the time of the May 2020 stop. The court denied the motion.

The jury was given an instruction on the elements of DWLR that did not contain a definition of "revoked." The jury found Malay guilty of DWLR.

After the verdict, Malay renewed her motion for judgment of acquittal and moved in the alternative for a new trial. She argued that DMV representative Tennison

had incorrectly told the jury that a license remained revoked until it was reinstated. Malay argued that a license remained in revoked status only for the specific duration of time imposed by the court or DMV — in her case, ninety days for each of her revocations. Because the May 2020 traffic stop was well outside this period, she argued that she was not guilty of driving while her license was revoked.

The State responded that Malay's license was in revoked status in May 2020 because she had not taken all the steps necessary to reinstate her license. The court instructed the parties to make their arguments in writing and to brief the motion for judgment of acquittal and new trial.

Malay subsequently filed a written motion for judgment of acquittal and new trial. She repeated her argument that, based on the statutory definition of "revoked" and several other statutes relating to driver's license revocations, her license had not been in revoked status on the day of her May 2020 traffic stop. The State opposed the motion, arguing that, based on the statutory scheme, a license remains revoked "until the individual successfully reinstates their license."

The court issued a written order denying Malay's motion for judgment of acquittal and new trial. Based on the statutes relating to driver's license revocations, the court concluded that "a person's privilege to drive remains revoked until such time as the person takes the requisite steps necessary through the Department of Motor Vehicles to have their license reinstated."

Malay proceeded to her next jury trial on DWLR, this time based on her incident of driving in June 2020. Malay was acquitted of DWLR in this trial and convicted of the lesser offense of driving without a valid license. She does not appeal the judgment in that case.

Malay then proceeded to her third DWLR trial based on the incident of driving in December 2020. Tennison again testified to the jury that a license that has been revoked remains revoked until the driver completes all of the necessary steps to

get their license reinstated and that in December 2020, Malay had not taken these steps; thus, her license remained "revoked."

Malay introduced a page from her ALVIN report showing her prior revocations with their start and end dates. The State argued that the ending dates might be confusing to the jury because a license does not automatically cease to be revoked at these ending dates. The prosecutor thus asked the court to instruct the jury that a license remains revoked until a person takes the necessary steps to have it reinstated and requested language to this effect that was taken directly from the court's order denying Malay's motion for judgment of acquittal and new trial in the first case.

The jury was ultimately instructed using the statutory definition of "revoke"[2] and was also instructed that "[a] person's privilege to drive remains revoked until such time as the person takes the requisite steps necessary through the Department of Motor Vehicles to have their license reinstated."

The jury returned a guilty verdict on DWLR.

At sentencing, the district court sentenced Malay to 90 days with 90 days suspended (0 days to serve) with 2 years of probation and 15 hours of community service for each DWLR conviction.

Malay appealed both convictions. Because they both raise the same statutory interpretation question, we consolidated the two cases on appeal.

*Why we affirm Malay's convictions for DWLR*

This consolidated appeal raises a question of statutory interpretation: when does a revoked driver's license no longer qualify as "revoked" for purposes of AS 28.15.291, the statute criminalizing driving while license revoked?

---

[2] AS 28.90.990(a)(26).

The proper interpretation of a criminal statute is a question of law that we review *de novo* using our independent judgment.[3] When "interpreting a statute, we consider its language, its purpose, and its legislative history, in an attempt to 'give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others.'"[4] "As a general rule, '[a]ll sections of a statute should be construed together so that all have meaning and no section conflicts with another.'"[5]

We begin our analysis with the plain language of the statute. Alaska Statute 28.15.291(a) provides, in relevant part, "[a] person commits the crime of driving while license . . . revoked . . . if the person drives . . . a motor vehicle on a highway or vehicular way or area at a time when that person's driver's license, privilege to drive, or privilege to obtain a license has been . . . revoked."[6]

The term "revoke" is defined in AS 28.90.990(a)(26) as follows:

> "revoke" means the termination, by formal action of the Department of Public Safety or the Department of Administration or by formal action of a court, of a certification, registration, license, permit, or privilege issued or allowed under this title or regulations adopted under this title; the certification, registration, license, permit, or privilege may not be reissued, renewed, or restored during

---

[3]  *E.g.*, *Hillman v. State*, 382 P.3d 1198, 1200 (Alaska App. 2016).

[4]  *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003) (quoting *Muller v. BP Exploration Inc.*, 923 P.2d 783,787 (Alaska 1996)).

[5]  *Penetac v. Municipality of Anchorage*, 436 P.3d 1089, 1092 (Alaska App. 2019) (alteration in original) (quoting *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011)).

[6]  We note that there are two different theories of DWLR depending on how the license was revoked. Subsection (a)(1) applies to licenses that have been revoked "under circumstances described in AS 28.15.181 or 28.15.182 or a similar law in another jurisdiction." This subsection applies to court-ordered revocations that are based on criminal convictions for crimes like driving under the influence or DWLR. *See, e.g.*, AS 28.15.181(a)(5), (9). Alaska Statute 28.15.291(a)(2) applies to licenses that have been revoked "under circumstances other than those described in (1) of this subsection."

the time for which revoked; however, after that time, an application for a new certificate, registration, license, permit, or privilege may be made[.]

There is an inherent ambiguity in this definition. On the one hand, the use of the word "termination" suggests that a revocation is permanent and that a license remains in "revoked" status until such time that the person affirmatively acts to reinstate their license. Such an interpretation is consistent with the language "has been . . . revoked" in the DWLR statute.[7] As a grammatical matter, "*has been* revoked" is written in the present perfect tense, which generally indicates an action that has occurred in the past but that still has ongoing relevance to the present.[8] "[H]as been revoked" therefore suggests that the license was revoked in the past and that it remains "revoked" in the present until some future action happens to change its status.

On the other hand, the statutory definition of "revoked" also refers to a person's ineligibility to apply for a new license "during the time for which revoked."[9] The phrasing "time for which revoked" suggests that the revocation has a specific endpoint after which the license is no longer "revoked." This is the interpretation forwarded by Malay at trial. Malay argued that because the specific period of revocation ordered by the court had expired, her license was no longer in "revoked" status. That is, Malay acknowledged that her license remained invalid and that she did not have the right to drive. But she argued that because the specific period of revocation had ended,

---

[7] AS 28.15.291(a)(1).

[8] For example, the phrase "I lived in America for five years," which uses the simple past tense, indicates that the speaker no longer lives in America. In contrast, "I have lived in America for five years," which uses the present perfect tense, indicates that the speaker still lives in America. *See* https://proofed.com/writing-tips/when-to-use-the-present-perfect-tense (explaining that the present perfect tense is used to signify actions "that extend[] into the past and continue[] into the present").

[9] AS 28.90.990(a)(26).

she was only guilty of driving without a license (an infraction) rather than guilty of DWLR (a class A misdemeanor).

Alaska Statute 28.15.211, the statute that enumerates the steps a person must take to reinstate a revoked license, also refers to a specific "period of revocation." Subsection (d) of AS 28.15.211 states, in pertinent part, that "[a]t the end of a period of revocation or limitation following a revocation, a person whose driver's license has been revoked may apply to the department for the issuance of a new license." The provision then proceeds to list the steps a person must take to obtain a new license. These steps include submitting to a reexamination, "pay[ing] all required fees including a reinstatement fee," and (if the revocation was based on a conviction for driving under the influence or refusal to submit to a chemical test) submitting proof of alcohol screening and treatment.[10]

The subsection that follows AS 28.15.211(d) also uses the term "period of revocation" and adds an additional requirement to the list of steps a person must take to reinstate a revoked license. AS 28.15.211(e) provides:

> At the end of a period of limitation, suspension, or revocation under this chapter, the department may not issue a driver's license or a duplicate driver's license to the licensee until the licensee has complied with AS 28.20 relating to the proof of financial responsibility.

Thus, at first blush, Malay's arguments at trial appear to have some potential merit. The statutory phrase "[a]t the end of a period of revocation" could be understood to suggest that the revocation has a specific endpoint and that a license is no longer "revoked" once that specific "period of revocation" has ended.

But, as Malay acknowledges on appeal, there is other statutory language that clearly indicates that a license remains "revoked" even after the specific "period of

---

[10] AS 28.15.211(d).

revocation" has ended. Alaska Statute 28.20.240, the statute requiring proof of financial responsibility, states:

> Whenever under a law of this state the license of a person is suspended, revoked, limited under AS 28.15.201, or canceled for any reason, the department may not issue to that person a new or renewal of license until permitted to do so under the motor vehicle laws of this state. *A period of suspension, revocation, or cancellation continues until proof of financial responsibility for the future is provided. Upon expiration of a period of limitation, the license remains revoked until proof of financial responsibility for the future is provided.*[11]

This provision clarifies that a driver's license remains "revoked" even after the "period of revocation" ordered by the court or the DMV has ended. Malay's argument that her license was no longer "revoked" once the "period of revocation" ended is therefore directly contrary to Alaska statutory law.

On appeal, Malay acknowledges that AS 28.20.240 makes clear that a revoked license remains revoked even after expiration of the "period of revocation." But she argues that this represents a limited exception to a default rule that a license is no longer revoked once the period of revocation is over. According to Malay, it was error for the court to instruct the jury that a revoked license remains "revoked" until *all* the steps needed to reinstate the license are completed.

Malay's argument on appeal requires us to decide whether providing proof of financial responsibility — standing alone — is sufficient to transform a revoked license into one that is no longer "revoked" for purposes of DWLR prosecution. In other words, does a revoked license remain "revoked" until *all* of the steps that are needed to obtain a new license are completed or is providing proof of financial responsibility enough? We note that in most cases this question of statutory interpretation would remain purely academic given the unlikelihood that a person would take on the financial

---

[11]  AS 28.20.240 (emphasis added).

burden of providing "proof of financial responsibility" until they had already completed the other steps to reinstate their license and are close to getting their license back.[12] But because there was evidence at Malay's first trial that she had taken *some* of the steps needed to reinstate her license and because the State did not directly elicit testimony whether proof of financial responsibility was one of the steps she had taken, we are required to answer this statutory interpretation question in this case.

We find the clearest answer to this question in AS 28.15.201, the statute governing the issuance of limited licenses. Under AS 28.15.201(a), upon a finding of good cause, a court has the authority under certain circumstances to "impose limitations upon the driver's license of a person that will enable the person to earn a livelihood without excessive risk or danger to the public." This authority is discretionary and requires the person whose license has been revoked to provide a certification of employment and "proof of enrollment in and compliance with or completion of an alcoholism treatment program when appropriate."[13] The person must also surrender their license.[14] In its place, the court issues a "certificate" that is "valid for the duration of the limitation" set by the court.[15]

Alaska Statute 28.15.201(c) governs what happens when the duration of the limitation expires. This provision provides:

> After the termination of a limitation as shown on the certificate issued under (b) of this section, the license of a

---

[12]  *See* AS 28.20.390 (providing proof of financial responsibility as a person who is not the owner of a vehicle); AS 28.20.410 (providing proof of financial responsibility through motor vehicle liability policy); AS 28.20.420 (providing proof of financial responsibility as nonresident); AS 28.20.470 (providing proof of financial responsibility with bond of surety company).

[13]  AS 28.15.201(b)(1)-(2).

[14]  AS 28.15.201(b)(3).

[15]  AS 28.15.201(b)(4).

> person on whom a limitation was imposed is revoked until the person receives a new license meeting the requirements set out in AS 28.15.211.[16]

Thus, upon termination of a limitation, the revoked driver's license remains "revoked" until such time that the person completes *all* the steps for reinstatement listed in AS 28.15.211 and the DMV reinstates their license. As already explained, those steps include submitting to a reexamination, paying "all required fees," submitting proof of alcohol treatment (if required), and providing proof of financial responsibility for the future.[17]

When we interpret a statute, we are required to avoid an interpretation that would lead to an absurd or illogical result.[18] Here, there is clear legislative intent establishing, in the context of limited licenses at least, that a revoked license remains "revoked" until *all* the steps for reinstatement have been taken and the license has been reinstated. It would be absurd and illogical for this legislative intent to only govern revoked licenses for persons who were allowed to temporarily drive under a limited license. Instead, it makes sense that this legislative intent governs *all* revoked licenses and that it also applies to the definition of "revoked" in the DWLR statute.

Indeed, this interpretation of "revoked" is consistent with the language of AS 28.15.181(f), which governs the court's authority to terminate a revocation that was based on a conviction for driving under the influence or refusal to submit to a chemical test. Alaska Statute 28.15.181(f) states:

> The court may terminate a revocation for an offense described in (a)(5) [driving under the influence] or (8) [refusal] of this section if

---

[16]   AS 28.15.201(c).

[17]   AS 28.15.211(d)-(e).

[18]   *See State, Dep't of Com. & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 357 (Alaska 2000).

(1) the person's license, privilege to drive, or privilege to obtain a license has been revoked for the minimum periods set out in (c) of this section; and

(2) the person complies with the provisions of AS 28.15.211(d) and (e).

In other words, a revocation based on driving under the influence or refusal cannot be terminated by a court until the minimum period of revocation has ended *and* the person has completed all of the steps to get their license reinstated under AS 28.15.211(d) and (e), including reexamination, payment of fees, proof of alcohol treatment, and proof of financial responsibility.[19]

Thus, the plain language of AS 28.15.201(c) and AS 28.15.181(f) directly supports our conclusion that a license remains "revoked" for purposes of a DWLR prosecution until such time that the person has taken all of the affirmative steps they must take to reinstate their license. Notably, Malay does not point to any legislative history that suggests otherwise.[20]

We therefore conclude that, contrary to Malay's arguments at trial and on appeal, a revoked license does not cease being "revoked" for purposes of a DWLR prosecution when the period of revocation specifically ordered by the court ends or when proof of financial responsibility is provided; instead, the license remains "revoked" until all the steps required for reinstatement have been taken and the license is reinstated.

---

[19] *See* AS 28.15.211(d) (requiring reexamination, payment of fees, and proof of alcohol treatment before reinstatement of license); AS 28.15.211(e) (requiring proof of financial responsibility before reinstatement of license).

[20] *Cf. State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016) ("[T]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be." (quoting *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014))).

We note that a majority of the jurisdictions facing similar questions have come to the same conclusion with regards to their DWLR statutes.[21] That is, a majority of these jurisdictions have held that a person who drives after their license has been revoked but before it has been reinstated is guilty of driving while license revoked even though the specific period of revocation ordered by the court may have ended.[22]

Our interpretation of the DWLR statute is also consistent with the DMV's understanding of when a driver's license qualifies as "revoked." At both of the trials Malay appeals, the manager of the Palmer DMV testified that a license that has been revoked remains "revoked" until all the steps needed to reinstate the license are taken.[23]

We therefore reject Malay's claim that her juries received a legally incorrect definition of "revoked."

---

[21] *See, e.g.*, *State v. Brude*, 222 N.W.2d 296, 297-98 (N.D. 1974); *People v. Demperio*, 658 N.E.2d 718, 719 (N.Y. 1995); *City and County of Denver v. Palmer*, 342 P.2d 687, 688 (Colo. 1959); *State ex rel. Collins v. Scott*, 633 P.2d 397, 398 (Ariz. 1981); *People v. Suddoth*, 202 N.E.2d 120, 122-23 (Ill. App. 1964); *State v. Watkins*, 813 A.2d 435, 439-40 (N.H. 2002); *Rickard v. District of Columbia*, 214 A.2d 476, 478 (D.C. 1965); *White v. State*, 94 A.3d 833, 836-37 (Md. Spec. App. 2014); *Fink v. State ex rel. Dep't of Pub. Safety*, 852 P.2d 774, 776-77 (Okla. Civ. App. 1992); *see generally* Joseph B. Conder, Annotation, *Validity, construction, application, and effect of statute requiring conditions, in addition to expiration of time, for reinstatement of suspended or revoked driver's license*, 2 A.L.R.5th 725, §§ 12-13 (1992) (noting cases where revoked licenses were and were not automatically restored).

[22] *See Yoder v. Commonwealth*, 835 S.E.2d 897, 900-01 & n.4 (Va. 2019) ("Many courts . . . hold that a revocation period is simply a period during which an individual may not apply to have his license reinstated and that a revoked license remains revoked until reinstatement.") (collecting cases).

[23] *See also* Alaska Dep't of Admin. Div. of Motor Vehicles, State of Alaska Driver Manual 13 (2025).

*Malay's other arguments on appeal*

Malay raises two other arguments on appeal. She argues first that it was error for the court to allow Tennison, the Palmer DMV manager, to testify that Malay's license was "revoked." According to Malay, this was a "legal conclusion" that Tennison was not qualified to make.[24] But, as the State points out, whether Malay's license was "revoked" is a mixed question of fact and law. While there was the legal question of what a person must do to get their revoked license out of "revoked" status, there was also a factual question of whether Malay had taken those steps.

Here, Tennison testified at both of the trials at issue that the DMV considered a license "revoked" until the license-holder took the necessary steps to have their license reinstated and had their license reinstated. Tennison further testified that the DMV records showed that Malay's license had not been reinstated, which indicated that she had not taken those steps. Given the definition of "revoked" that we have articulated in this opinion, we conclude that any error in Tennison testifying to the legal definition of "revoked" did not prejudice Malay.

Malay's next argument is a claim of insufficient evidence. Malay argues that the evidence at trial was legally insufficient to prove that her license was revoked because Tennison based his testimony only on the fact that her license had not been reinstated. According to Malay, "There are conceivable circumstances in which a person may have taken all of the requisite steps necessary to reinstate their license, but for reasons outside of their control, do not have a driver's license."[25] But, as we have just explained, Alaska law (and the law of many jurisdictions) is clear that a license

---

[24] *Cf. McGlinchy v. State, Dep't. of Nat. Res.*, 354 P.3d 1025, 1036 (Alaska 2015) ("[I]t is well established that expert witnesses are not permitted to testify on what the law is."). *See also* Alaska R. Evid. 704.

[25] As an example of such a circumstance, Malay asserts that a person could have taken the driving test but failed. We disagree with Malay that a person who failed the driving test has taken the steps necessary to get their license reinstated.

remains revoked for purposes of a DWLR prosecution until the person completes all the steps necessary for reinstatement *and* their license is reinstated.[26] Such a rule is not only consistent with the statutory language, it also provides a bright-line rule that is easily administrable and consistent with the overall policy of ensuring that persons with a revoked license do not drive until they are legally entitled to do so.[27]

*Conclusion*

The judgments of the district court are AFFIRMED.

---

[26] *Yoder*, 835 S.E.2d at 900-01 & n.4 (noting that "[m]any courts" hold "that a revoked license remains revoked until reinstatement") (collecting cases); *see, e.g.*, *State v. Rivera*, 868 P.2d 1059, 1061 (Ariz. App. 1994) ("The license and accompanying privilege to drive when revoked by the state remains revoked . . . until the . . . issuance of a new license[.]"); *White,* 94 A.3d at 837 ("When one's Maryland license to drive is revoked or suspended, the privilege remains revoked or suspended until an application for a new license is filed and the license has been granted."); *State v. Brude*, 222 N.W.2d 296, 297 (N.D. 1974) ("[A] revocation continues until such time as a new application has been submitted and a license issued.").

[27] *See* AS 28.15.201(c) ("[T]he license of a person on whom a limitation was imposed is revoked until the person *receives a new license meeting the requirements set out in AS 28.15.211.*") (emphasis added); *cf. Tenison v. State*, 38 P.3d 535, 539 (Alaska App. 2001) ("[W]hen a person is wrongfully denied or deprived of a license, the person normally must pursue civil remedies to obtain or regain the license, instead of engaging in the regulated activity without a proper license.").